# Louisville & Nashville Railroad Co. *v.* Hill, *et al.*

### *Action to recover Statutory Penalty for Cutting Trees.*

1. *Who can maintain action for statutory penalty for cutting trees from estate of intestate.*—The right of action to recover the statutory penalty for wrongfully and willfully cutting trees from the lands of another without the consent of the owner (Code of 1886, § 3296), where the trees are cut from lands belonging to the estate of an intestate after the appointment of an administrator, is in the heirs of the decedent and not in the administrator; the statute giving the right to maintain such action to the *owner* of the land.

2. *Right of widow in lands of husband before assignment of dower.*—A widow has no right before the assignment of dower to authorize the cutting of timber on the homestead, except for fuel and necessary improvements; and she can not authorize any one else to destroy the timber on said lands.

3. *Action by heirs to recover the statutory penalty for cutting trees; when insolvency of the estate inadmissible in evidence.*—In an action by the heirs of an intestate to recover the statutory penalty for wrongfully cutting timber after the intestate's death from lands belonging to his estate, evidence that after such cutting the estate was reported insolvent, and the land from which the timber was cut was assigned to the widow and minor children as a homestead, is inadmissible to show that the right of action was in the widow instead of in the heirs, where it does not appear that at the time of his death the intestate owned no homestead exempt from levy and sale, (Code of 1886, § 2544), or that the entire estate did not exceed the exemption allowed by law (Acts, 1886-87, p. 112), or that the homestead assigned is less than the amount of such exemption, (Acts, 1892-93, p. 138), so that the same would vest absolutely in the widow and minor children, irrespective of the solvency of the estate; since without such facts appearing, the fee to said land does not vest in the widow and minor children, or either, until judicial ascertainment of the insolvency of the estate, but remains in the heirs.

4. *Same; sale of land after cutting immaterial.*—In an action by the heirs of an intestate to recover the statutory penalty for cutting timber from the lands which belonged to the intestate's estate, evidence that after the wrongful cutting of the trees the plaintiffs conveyed the land, is immaterial; it not appearing that the conveyance was of anything but their interest at the time of the execution of the deed, which had no effect on their cause of action for said trespass.

[Louisville & Nashville Railroad Co. v. Hill, *et al.*]

5. *Same; evidence as to kind of trees cut; not objectionable because introduced before proving that the cutting was done by defendant.*—In such an action it is not error to permit the plaintiffs to prove the number and kind of trees cut from their land before proving that the cutting was done by defendant; the plaintiff's counsel stating at the time that he would show by other evidence that the trees were cut by the defendant.

6. *Action to recover the statutory penalty for cutting trees; evidence that a fence was torn down in the commission of the offense admissible.*—In an action to recover the statutory penalty for willfully and knowingly cutting trees from the lands of another without the consent of the owner, evidence that the plaintiff's fence was torn down in order to cut the trees is admissible in connection with the other evidence tending to show the willful character of the trespass.

7. *Same; admissibility of evidence on cross-examination.*—In an action by heirs to recover the statutory penalty for the cutting of trees upon lands belonging to their intestate's estate, where the defendant called out on the cross-examination of the widow of the deceased that his agent went to her after the cutting and endeavored to get her to sign a contract, the plaintiffs may, irrespective of the materiality of the testimony, cross-examine such agent as to whether he went to the widow after the suit was brought; and the testimony of the widow and that of the agent being at variance as to the number of interviews between them, such cross-examination of the agent by the plaintiff is material as tending to explain the discrepancy.

8. *Same; same; privileged communications.*—In an action against a railroad company to recover the statutory penalty for cutting trees on lands belonging to the plaintiffs, which ran within 24 feet of the defendant's track, where the defendant's foreman who did the cutting testified for the defendant that he had consulted with the defendant's attorney in regard to moving people 50 feet back from the track as being upon defendant's right of way, such foreman can be cross-examined as to the extent of the order for such moving and what passed between him and the attorney; and the introduction of such testimony waives any right to object which the defendant may have had on account of the privileged character of the communications, and the plaintiff may show by the attorney what took place at such interview.

9. *Same; evidence as to acts and declarations by agent in commission of the trespass.*—In an action against a railroad company to recover the statutory penalty for wrongfully cutting trees upon lands belonging to the plaintiff, but which the defendant claimed constituted a part of its right of way, evidence of the declarations and conduct of the defendant's agent while cutting said trees, is admissible, where there is independent proof that he had been ordered to clear the right of way, and that the cutting was done while in the exercise of this authority.

10. *Consent of widow to cut trees from land of intestate constitutes no defense.*—It is no defense to an action brought by the heirs of an·intes-

[Louisville & Nashville Railroad Co. v. Hill, et al.]

tate to recover the statutory penalty for willfully and knowingly cutting trees on the lands which belonged to the intestate, that the widow consented to such cutting; the title to the property vesting in the heirs upon the death of the intestate, and the widow having no title thereto.

11. *Same; not necessary that the cutting should be done with malice and evil intent.*—In order to maintain an action to recover the statutory penalty for willfully and knowingly cutting trees from the lands of another without the owner's consent, it is not necessary that the cutting should have been done maliciously and with evil intent; and a charge which so instructs the jury is properly refused.

12. *Same; no defense, that the one doing the cutting thought he had permission.*—In such an action it is no defense to the recovery of the penalty sued for that the defendant did the cutting under the belief and opinion that he had permission to do so; the fact that he acted in good faith without the intention of trespassing being immaterial.

13. *Same; when fact that cutting was done by order of defendant's agent no defense to action.*—In such an action, where the evidence shows that the trees cut were on the plaintiff's lands, and that the person doing the cutting did it for one whom the defendant's agent had ordered to do it, under direction from the defendant, it is sufficiently shown that the cutting was done under the agent's direction, within the scope of the authority delegated to him by the defendant; and the fact that the cutting was not done by the agent himself or by the person he ordered to do it, does not relieve the defendant from liability.

14. *Same; measure of recovery.*—In an action to recover the statutory penalty for willfully and knowingly cutting trees of different varieties from the lands of another, where the number cut of each variety is alleged in the complaint under a videlicet, and there is evidence that a certain number of each variety was cut, the recovery can be had for the number of trees actually cut, although the number thereof does not correspond with the number alleged in the complaint.

15. *Same; sufficiency of evidence to authorize recovery.*—In an action to recover the statutory penalty for willfully and knowingly cutting trees on the lands of another, as in other civil actions, in order to entitle the plaintiff to recover it is not incumbent on him to make out the averments of the complaint with absolute certainty, or beyond reasonable doubt; but all that is necessary is for the plaintiff to make out his case to the reasonable satisfaction of the jury; and in such action a charge which instructs the jury that "you can not find for the plaintiff unless you believe that the averments of the complaint have been proven to your satisfaction beyond a reasonable doubt," exacts too high a measure of proof, and is properly refused.

APPEAL from the Circuit Court of Limestone.
Tried before the Hon. H. C. SPEAKE.
This action was brought by the appellees against the

[Louisville & Nashville Railroad Co. v. Hill, et al.]

appellant, the Louisville & Nashville Railroad Company. There were six parties plaintiff, five of whom sued by their next friend, Emma K. Hill, their mother.

The complaint sought to recover from defendant the penalty given by section 3296 of the Code of 1886 for willfully and knowingly, without the consent of the plaintiffs, cutting down and destroying certain trees, designating the number, character and kind of trees. The defendant pleaded the general issue, and a special plea in which he set up that the title to the lands from which the trees were cut, was in one Mrs. Madge Lane, who acquired the same through a conveyance from the plaintiffs. To this special plea the plaintiffs demurred upon the ground that it was shown that the title to the land was conveyed to Mrs. Lane after the cause of action had accrued to the plaintiffs. This demurrer was sustained, and the cause was tried upon the general issue.

On the trial of the cause, it was shown that the plaintiffs were the children and only heirs at law of John W. Hill, deceased, and that at the time of his death, John W. Hill, owned and was in possession of the land upon which the trees were situated, and that he had obtained the land by conveyances from others who had owned and held it for a number of years.

The testimony for the defendant tended to show that the cutting was done through one J. P. Hagan, who was the section foreman upon the part of the defendant's railroad which ran near said land; that the land adjoined the right of way of the defendant's road, and that Hagan obtained the consent of Mrs. Emma K. Hill, the widow of John W. Hill, for him to cut the trees in controversy. Upon the examination of Hagan as a witness, he was asked the following question : ''State whether or not it was in pursuance of the authority given you by Mrs. Hill, that you cut them?'' The plaintiffs objected to this question, the court sustained the objection, and the defendant duly excepted. This ruling constitutes the basis for the 14th assigment of error.

Upon the defendant's offering to show that the estate of John W. Hill, deceased, was insolvent, and that there was an allotment of homestead exemption to the widow and her minor children, the plaintiffs objected to such evidence upon the ground that it was immaterial and

22

irrelevant. The court sustained the objection, and the defendant separately excepted to each of such rulings of the court. The facts pertaining to the other rulings of the court upon the evidence are sufficiently shown in the opinion.

Upon the introduction of all the evidence, the court at the request of the plaintiffs gave to the jury the following among other written charges: (3.) "The widow of John W. Hill, as such, had no power or right to give consent to the cutting of the timber, and the defendant is held to have known it as a matter of law, and if the widow ever gave any consent the plaintiffs can not be affected by it." (7.) "If through carelessness or negligence, the section foreman was ignorant of the title of the plaintiffs in the land, where the timber was cut, then he acted knowingly in cutting the trees and saplings; and he acted willfully, if he voluntarily and deliberately cut the trees and saplings knowingly; and if he was an agent of the defendant, and cut the trees or saplings within the range of his general employment, and did not have the consent thereto of the plaintiffs, then you would find a verdict for the plaintiffs for the value of any trees or saplings respectively described in the complaint cut by him or under his orders, the value fixed by law." The defendant separately excepted to the court's giving each of these charges, and also separately excepted to the court's refusal to give each of the following written charges requested by it: (1.) "If the jury believe the evidence they will find for the defendant." (2.) "The statute under which this action is brought, is a penal statute and must be strictly construed. The complaint charges that the defendant 'willfully' cut the trees and saplings on land belonging to the plaintiffs. In order for plaintiffs to recover, it is necessary that they prove this averment to your reasonable satisfaction; otherwise, plaintiffs are not entitled to recover. I charge you as matter of law, that the word, 'willfully,' when used in a penal statute, means 'purposely with evil intent, maliciously.' Therefore, unless you believe from the evidence that the defendant purposely or with evil intent, or maliciously, cut down or destroyed trees and saplings on land belonging to the plaintiffs, then your verdict should be for the defendant." (3.) "Under

the law, gentlemen of the jury, Mrs. Emma K. Hill, the widow of John W. Hill, was a tenant in common with the plaintiffs in this case, and as such, she had the right to exercise dominion and ownership over the whole property, and if you believe from the evidence that she consented for the defendant to cut the trees and saplings mentioned, then your verdict should be for the defendant, the defendant not being liable in this action." (4.) "The plaintiffs can not recover in this suit, unless they prove to your reasonable satisfaction that defendant knowingly and willfully cut and destroyed the trees and saplings mentioned; and if you believe from the evidence, that defendant cut or destroyed said trees under the belief and opinion that it had permission to do so, then defendant is not liable and your verdict should be for the defendant." (5.) "The railroad company is not liable in this action for any trees or saplings cut by Coleman Harris or by Hardie Malone, in pursuance of and direction or permission given by Mr. Hagan." (8.) "Emma K. Hill was a joint-tenant with the plaintiffs in this case. As such, she had the right to exercise authority and control over the whole land. Therefore, if you believe from the evidence, that she gave defendant permission to clear said land for the distance of fifty feet from the center of the track, and that in pursuance of such permission, said trees were cut, defendant is not liable in this action and your verdict should be for the defendant." (9.) "Emma K. Hill is a party plaintiff in this case." (10.) "The duty of Hagan, the section foreman, was to keep the track and right-of-way in proper condition. If you find from the evidence that he cut trees and saplings that were not on the right-of-way the defendant would not be liable therefor." (11.) "This is an action of debt, and it is admitted that Edgar J. Smith was the administrator of the estate of John W. Hill, at the time the trees and saplings are shown to have been cut, and at the time of the institution of this suit. This action should, therefore, have been brought in the name of said Smith, as administrator, instead of plaintiffs in this case." (12.) "Plaintiffs must prove with certainty the averments of the complaint. There is no evidence before you, that defendant cut down and destroyed seventeen oak trees as averred in the complaint." (13.) "The plaintiffs

have averred that the defendant willfully and knowingly cut and destroyed twenty-one hickory trees.. The evidence before does not show that this averment is true." (14.) "Unless you believe from the evidence that defendant knowingly and willfully cut and destroyed fifteen sycamore trees, your verdict should be for the defendant, as to the sycamore trees, not shown to your reasonable satisfaction, to have been cut by the defendant." (16.) "If you believe from the evidence that the trees and saplings in question were cut by Hagan, the section foreman, under the honest impression that he had permission from Mrs. Emma K. Hill to cut said trees and saplings, then your verdict should be for the defendant." (17.) "The plaintiffs can not recover in this case, if you believe from the evidence that the defendant cut the trees and saplings in controversy under the honest belief and impression that it had permission from Mrs. Hill to cut the same, given by her to Clark and Hagan or to Hagan alone." (20.) "You can not find for the plaintiffs unless you believe that the averments of the complaint have been proven to your satisfaction beyond a reasonable doubt." Charges numbered 21 to 39, inclusive, of the defendant's series were instructions that there was no evidence before the jury of a specified number of the different kinds of trees and saplings alleged in the complaint to have been cut by the defendant. Each of these charges were also refused, and the defendant separately excepted to each refusal.

There were verdict and judgment for the plaintiffs, assessing their damages at $980. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. JONES, for appellant.—Mrs. Hill, the widow, had authority to consent to the cutting so as to absolve the defendant from liability, either in an action of trespass or in an action to recover the statutory penalty. The English common law doctrine as to waste in cutting of growing timber, has no application in Alabama, where different conditions prevail.—*Owen v. Hyde*, 27 Am. Dec. 467; *Dawson v. Coffman*, 28 Ind. 220; *King v. Miller*, 99 N. C. 583. In this country, cutting of growing timber by the tenant for the purpose of clearing, for firewood, fencing and the like, is not waste. The test

of the right of a tenant to cut, is declared in many cases to be, "whether the proper enjoyment of the estate, is hindered by the timber;" and the cutting is held lawful, if necessary for "the proper and reasonable enjoyment of the estate"—if "conformable to good husbandry," which includes not merely the cultivation of the soil, but all the purposes of the farm, or the use to which the estate is devoted, including pasturage for animals.—*Davis v. Clark*, 40 Mo. App. 515; *Joiner v. Speed*, 68 N. C. 236; *Lambeth v. Warner*, 2 Jones Eq. (N. C.) 165. These authorities support the right of one in possession, as Mrs. Hill was, to consent to a cutting, such as was done here. Mrs. Hill was in possession and exercising acts of ownership; either we repeat, because her dower had not been assigned, or in her right of dower, or under homestead exemptions. She was a tenant in common, at least, with the heirs, and if she held by homestead exemptions in favor of herself and the minor children, she was a joint tenant.—*Grossman v. Lauler*, 29 Ind. 618; *Ex parte Burgess*, 1 Del. Ch. 233. The joint tenant, or tenant in common, who is left in possession, may, in general, manage the common property in any way he pleases, provided, he does not injure his co-tenants.—*Peabody v. Minot*, 29 Pick. 329. See, also, in this connection, *Wheeler v. Carpenter*, 107 Pa. St. 271, and *Baker v. Wheeler*, 8 Wendell, (N. Y.) 505, the latter being a case much like this; Freeman on Co-Tenancy & Partition, § 179. One tenant in common has authority to settle with the trespasser upon the common property, and release him from liability, which release is binding upon his co-tenants.—*Bradley v. Boynton*, 22 Me. 287. If the tenant in possession may do this in the first instance, as to damages for the trespass, he can certainly absolve from liability to a *penalty* by giving consent to cutting timber.

2. The widow is a necessary party plaintiff when her legal title, which by operation of law relates back anterior to the trespass, is shown to have existed at the time of the trespass, and to have become perfect before judgment; for the action can not be maintained except by all the holders of the legal estate at the time of the trespass. Whatever the character of the right to sue for this penalty, the right of action was certainly assets of the intestate, and subject, unless set apart by exemptions, to be

sued for and collected by the administrator for the payment of debts. On a declaration of insolvency, and the appointment of an administrator on the nomination of the creditors, the authority of either the heirs at law or the administrator in chief to sue for this penalty was ended, and the right to maintain this action was "*vested*" in the new administrator.—Code of 1886, § 2237; *Eubank v. Clark*, 78 Ala. 73.

3. This statute is highly penal.—*Grooms v. Hannon*, 59 Ala. 510; *Postal Cable Co. v. Lenoir*, 107 Ala. 643. To bring the party within the penalty, his act must be willful and inexcusable.—*McCleary v. Anthony*, 54 Miss. 708; *Lindell v. Hanibal &c. R. R. Co.*, 25 Mo. 550. There must be a "guilty intent" to evade or ignore the statute. *Moses v. Katzenberger*, 84 Ala. 98; *White v. State*, 44 Ala. 409; 1 Bishop Criminal Law, (7th ed.), § 345. If the jury have fair doubts on the whole evidence whether the defendant cut willfully and intentionally, or under honest mistake with reasonable ground therefor, the verdict must be for the defendant.—*White v. Comstock*, 6 Vermont, 405.

4. To entitle plaintiff to a recovery, all entitled to sue must join in the action; and the plaintiffs must be shown to be the owners. The cutting constitutes but one cause of action, and can not be split up.—*Foster v. Napier*, 73 Ala. 595. On L. R. Hill's testimony, it would appear that he did not have any claim to the land; yet, he is one of the plaintiffs. If he was not an owner, he is not entitled to recover; and as the evidence does not rebut the presumption from his testimony and on the other evidence that he was not an owner, the verdict should have been for the defendant.—*Walker v. Fenner*, 28 Ala. 367. The present action is in tort, and *ex delicto*.— *Williams v. Bowden*, 69 Ala. 433; *Meredith v. Holmes*, 68 Ala. 190.

5. Charge No. 2, requested by the defendant should have been given. The words of the statute are. "willfully and knowingly." Willfully must, therefore, mean something else besides knowingly doing an act. It must also be done wantonly, or with evil design, or colored with what the law terms malice. The offense, for which the penalty is given by section 3296 of the Code, is simply the extension of the statute against malicious mischief, so as to cover growing timber. To authorize the

[Louisville & Nashville Railroad Co. v. Hill, *et al.*]

penalty, there must be a finding of all the elements of bad faith or evil design necessary to uphold a conviction for malicious mischief. The only possible ground in which the refusal of this charge can be justified is that the definition of the word *willful*, is incorrect. This can not be maintained.—*State v. Preston*, 34 Wis. 675; *Mc-Manus v. The State*, 36 Ala. 285; *State v. Abram*, 10 Ala. 928.

McClellan & McClellan, *contra.*—1. When John W. Hill died the title to the land in controversy *eo instanti* descended to his children, the plaintiffs. They were then clothed with the right of action which could not be suspended or defeated by the administrator unless he intervened upon, took actual possession of and sought to subject the land or its rent to the debts and liabilities of his intestate; none of which it is even pretended he did in this case.—1 Brick. Dig., 937, 938; 3 Brick. Dig., 464, 465; *Calhoun v. Fletcher*, 63 Ala. 574; *Nelson v. Murfee*, 69 Ala. 598; *Bishop v. Lalouette*, 67 Ala. 197; *Gayle v. Johnson*, 80 Ala. 388; *Leatherwood v. Sullivan*, 81 Ala. 458; *Sullivan v. Rabb*, 86 Ala. 433; *McDonald v. Berry*, 90 Ala. 464; *Banks v. Speers*, 103 Ala. 436.

2. Even if the administrator had exercised all the powers she had over the land, it is more than doubtful whether he could bring such a suit as this, for the statutes, which are to be strictly construed, have given the right to the penalty therein provided to the "owners" of the land, which the administrator never is.—Code of 1886, § 3296; *Gravlee v. Williams*, 112 Ala. 539; *Bridgeport Dev. Co. v. Tritsch*, 110 Ala. 289; *Allison v. Little*, 93 Ala. 150.

3. Of course the widow never becomes the owner of the deceased husband's land until, under some circumstances, not developed in this case, it is afterwards set off to her under the exemption law. She could neither bring this suit nor give consent for this trespass.—*Lowery v. Rowland*, 104 Ala. 420.

4. Neither was this right of action in the plaintiffs changed by the allotment of the land to those entitled under the exemption laws, or the sale of the land to Mrs. Lane. Both occurred after the tort, after this suit and after the rights of the plaintiffs to the penalty had vested. The doctrine of relation can have no operation here.—20 Am. & Eng. Encyc. of Law, 726, 737. The plaintiffs,

adults among them, properly brought the suit, incurred costs and would be injured by such fiction, if allowed. Besides, there is no evidence that this land was the intestate's homestead, nor that he did not have more than the laws allowed his family, nor that his widow had brought any suit on this cause of action, which a directory statute gave her the right to do, nor that selection of the homestead was not required.—Code of 1886, §§ 2544, 2562, 2564; Acts, 1886-87, p. 112; Acts, 1888-89, p. 113; Acts, 1892-93 p. 138; *Banks v. Speers*, 103 Ala. 436.

5. Mrs. Hill, the widow, had no authority to consent to the cutting down or destroying the plaintiffs' timber on the land. This Mr. Hagan knew as a matter of law and fact; and, of course the court committed no error on this point either in its ruling on the evidence or the charges.—*Lowery v. Rowland*, 104 Ala. 420; *Gordon v. State*, 52 Ala. 308; *Dotson v. State*, 62 Ala. 141; *Allison v. Little*, 85 Ala. 517; *Allen v. State*, 60 Ala. 25.

HARALSON, J.—It is not pretended that the defendant railroad company had ever condemned, paid for or had a grant of land in any form, for its right-of-way at the point, where the timber grew, for the alleged cutting and destruction of which this suit was brought. Its road-bed is held alone by prescriptive right.

The plaintiffs are the children and only heirs at law of John W. Hill, who died intestate in March, 1894, and administration on his estate was granted to Edgar Smith in May following. He was the undisputed owner of the land at the date of his death. He bought the lot, as appears, in 1888, and he, and those from whom his title came, had been in possession and ownership of the same, for a great number of years. There is no dispute as to his exclusive possession and title, and its sources, nor suggestion of an adverse claim or holding on the part of anybody. He left a widow, Mrs. Emma K. Hill, by whom, as their next friend, the minor parties plaintiff joined in bringing this suit.

In February, 1895, the depredations on the land complained of, as appears, were committed, and on the 11th March, 1895, this action was commenced by the children and heirs at law of said Hill.

1. Assignments of error from 26 to 34, inclusive,

raise the question in different forms, as to who had the right of action for the damages claimed,—the administrator of the estate of Hill, or his widow and children.

"The relations of an executor or administrator to the real estate of his testator or intestate, [as we have heretofore said] are regulated by statute in this State, and are well settled and understood. He has no estate or interest in the lands of the deceased whom he represents. They pass, as at common law, to the devisee, or in case of intestacy, to the heir, at the instant of the death of the ancestor, subject to be intercepted, in either case, by the exercise by the personal representative, of the power conferred by statute. But, this is but a bare power with which the statute clothes him, to be exercised in the mode and for the purposes expressed in the statute,—to pay debts, or to effect an equitable division between the heirs or devisees."—*Stovall v. Clay*, 108 Ala. 105 ; *Banks v. Speers*, 97 Ala. 560.

2. The statute under which this action was brought, —Code of 1886, § 3296,—confers the right of action thereunder on the *owner* of the land. Its language is : "Any person who cuts down, [&c., any of the trees mentioned] on land not his own, willfully and knowingly, without the consent of the owner of the land, must pay to the owner," &c. The object of the statute, was, not to enrich the owner while alive,—for before its enactment he had, and still has, the common law right of action to recover his damages for such a trespass,— nor was it to increase the assets of his estate in case of his decease ; but, as we have held, "The statute is intended for the protection of the freehold from spoliation or destruction ; from that which at common law would be deemed waste. The remedy is given exclusively to the owner of the freehold, and he may pursue it, though he have not the possession."—*Allison v. Little*, 93 Ala. 150 ; *Turner Coal Co. v. Glover*, 101 Ala. 289 ; *Clifton Iron Co. v. Curry*, 108 Ala. 581 ; *Gravlee v. Williams*, 112 Ala. 539.

The alleged depredation occurred after the administrator was appointed. It is not shown that he ever took or claimed possession of the land for purposes of administration. If he had done so, he would have had no right to consent to a depredation, nor could he have claimed, at most, for the creditors, or heirs, more than common

law damages for an unwarranted trespass. He could not, certainly, have maintained this action. The statute limits the right of action to the owner of the legal estate in the lands.

It is not shown that this lot was attached or appurtenant to the homestead of said John W. Hill, at his death. If it had been, his widow, until assignment of dower, was entitled to no more than the possession of his dwelling house, its appurtenances and the plantation connected therewith, if any, and from which, in such case, she would have been entitled to a reasonable amount of wood from the land for fuel, fences and other necessary improvements; and she could not, herself, destroy nor authorize any one else to destroy the timbers on the land, nor do any other permanent injury to the inheritance.—*Lowery v. Rowland*, 104 Ala. 420. As touching the rights of Mrs. Hill in this respect, in the land in question, we have no information; and from anything appearing so far, she had no right in common with, or without the heirs, to maintain the action.

3. It was sought to be shown, that the administrator reported the estate of his intestate to be insolvent, and on the 7th August, 1895, after the alleged trespass, it was duly declared insolvent; that Emma K. Hill, the widow, filed her petition in the probate court alleging the insolvency of said estate, praying allotment of homestead exemption to her and her minor children; that the court appointed commissioners to allot such exemption, and that they allotted to her and her minor children the lot mentioned in these proceedings, with other property as homestead exemption, and so reported, which report the probate court confirmed. All this, as appears, was after the commission of said alleged trespass.

We are not informed by the abstract, whether the proceeding was under section 2544 of the Code, providing for homestead exemption out of other lands of a decedent, for the reason that at his death, he owned no homestead exempt from levy and sale; or under the act of 1886-87, providing for the setting apart to the widow and minor child or children, all the real and personal property of decedent, for that he died owing personal and real property not exceeding the amount exempted by law to widows and minor children.—Acts, 1886-87,

p. 112; Code of 1886, p. 570, n. If under the latter act, if the homestead did not exceed 160 acres of land and $2,000 in value, which does not appear, the estate vested absolutely, whether solvent or insolvent, in the widow or minor child or children.—*Smith v. Boutwell*, 101 Ala. 375; *DeArmond v. Whitaker*, 99 Ala. 252. Nor was it shown that the estate of the decedent, set aside as provided by law to the widow, or to her and the minor children, was less in value than the amount exempted by law, either real or personal, or both, so as to make it vest absolutely in fee in her and them, as provided by the act of December 13, 1892.—Acts, 1892-93, p. 138. Without this, in either case, the fee did not vest in them absolutely, before a judicial ascertainment and declaration of insolvency. Some estates are ascertained to be insolvent, which do not fall within either of the categories provided for in the statutes above referred to. *Smith v. Boutwell*, *supra*; *Smally v. Chisenhall*, 108 Ala. 683.

It not appearing, therefore, that the widow and minor children, or either, had the fee in this land, before the declaration of insolvency of said estate, it remained in the heirs. The right of action in the plaintiffs was not changed by the proceeding offered in evidence, and they were the proper parties to institute the action. The evidence sought to be introduced was subject to the objection interposed to its introduction, and was properly excluded.—*Lowery v. Rowland*, 104 Ala. 420.

4. The defendant proposed to prove, and was not allowed, on the objection of plaintiffs, that Mrs. Hill and her two children, Dora and Lawrence R., parties plaintiff, conveyed their interest in this lot to Mrs. Lane, on the 9th September, 1895. This was long after the alleged depredation was committed, and after the right of action, if any, had accrued to Dora and Lawrence; and the conveyance of the land, so far as appears, was of their interest at that time, which had no effect on their cause of action against defendant for said trespass. It remained in them unaffected by said conveyance.—*Evans v. S. & W. Railway Co.*, 90 Ala. 54.

5. The plaintiffs sought to prove by a number of witnesses,—the admission of whose testimony against the objections of defendant is made the basis of several assignments of error,—the number and kind of trees

that were cut from the land; the grounds of objection being, that it had not been shown that the trees were cut by the defendant. Plaintiffs' counsel stated that he would show by other evidence that they were cut by the defendant. The admission of the evidence under this proposition was not improper. The plaintiffs did introduce evidence further on in the course of the trial, tending to show that the cutting was done by defendant's agents, under instructions from the defendant.—*Mardis v. Shackleford*, 4 Ala. 494; *Crenshaw v. Davenport*, 6 Ala. 390; *Townsend v. Cowles*, 31 Ala. 457.

6. Two or more witnesses were asked by the plaintiffs, either, if in order to get the timbers cut, the fence of the plaintiffs, which ran through the land, at the foot of the embankment of the railroad, was torn down, that it was knocked down, or if the fence was torn down when the timbers were cut and while the cutting was going on? The evidence was admitted against the objections of defendant, that it was irrelevant, immaterial and incompetent. It was material for the plaintiffs to show, to make out this case, that the trespass was committed willfully and knowingly. This evidence we apprehend, in connection with all the other evidence introduced for the same purpose, tending to show this fact, was competent to be considered. That there was other evidence tending to show the same fact, cannot be reasonably questioned.

7. There was no error in allowing plaintiffs to ask Hagan, the defendant's witness, on cross-examination, if he went to see Mrs. Hill after this suit was brought. She had stated on her cross-examination by defendant, that Hagan had been to her house after the cutting of the trees, and had brought her a contract to sign, which she refused to sign. It was certainly competent for plaintiffs to ask him about a matter the defendant had called out, whether it was material or not. Besides, the two witnesses differed in their statements as to the number of interviews they had on the subject, and this question was not irrelevant as calling for evidence tending to explain this discrepancy, if it could be made plain, and to test the memory of the witness.

8. The question asked the witness Hagan, which the court refused to allow to be answered, made the basis of assignment of error 14, called for illegal evidence. Mrs.

[Louisville & Nashville Railroad Co. v. Hill, *et al.*]

Hill, as we have seen, had no right or power to give the witness authority to cut the trees, and the defendant could not shield itself behind such authority, if given. Mrs. Hill denied having given it.

9. Assignments from 15 to 23, inclusive, and 35 and 36 relate to the same matter and may be considered together. The witness, Hagan, under whose orders the trees were cut, was asked, while being examined by defendant, who introduced him, "Did you not consult a lawyer with reference to moving people back fifty feet?" He answered, "He did consult Capt. McClellan, railroad attorney." On the cross-examination, the witness was asked when this was, the extent of the order, and what passed between him and the attorney. The evident object of the question as asked by defendant, was to show that the witness was acting in what he did on legal advice, and to get the benefit of his answer as made, that in committing the trespass he was not guilty of any willful disregard of plaintiffs' rights. The answer tended to show this. The questions propounded to him on the cross, which were objected to and allowed, were intended, and had a tendency to that end, to rebut the effect of the answer to the question in chief. Having brought out this evidence for the purposes intended, the plaintiffs had the right to cross him in the manner they did, to show that the company could not thus shield itself from liability for the alleged trespass.

After the witness had been thus examined in chief and on the cross, and when the plaintiffs came to offer their rebutting evidence, Capt. McClellan was introduced as a witness by plaintiffs, and testified that the conversation referred to by said Hagan did not occur in 1893, as he stated, but that it occurred in January, 1895, just before the trespass occurred, when Hagan told witness he had orders to move everybody back fifty feet from the railroad track, and McClellan said to him, "that he had better not attempt that; that he could not force people back, and if he did not mind he would get shot; that court houses were put up for the purpose of taking property from people, and all that he could do, was to request the people to move back, and if they did not move back, for him to report to the law department." Defendant moved to exclude this evidence, on the ground that the witness was at that time, as the evidence tended to show,

the attorney for defendant, and was consulted professionally. The objection was not valid. The defendant waited while its witness was being examined touching this matter, and made no objecton to the examination, on account of professional confidence. It thus availed itself of all the advantages its witness gave of this interview, and when it was proposed to contradict him, and show what the facts were, to avoid the damaging effects of the evidence of the plaintiffs, this objection was sprung by defendant. If ever the defendant had the right to interpose such an objection, it waived it. It could not invite such an investigation, and reap the advantages of a partial and one sided statement from its witness of what occurred, and thereafter object to plaintiffs bringing out the whole conversation. Besides, it does not appear that the witness, Hagan, sought, or had authority to seek, the advice of this attorney for his principal, or that he was not seeking it for himself and his own protection, and not for that of the defendant.

10. There were several objections made to the declarations and conduct of the agent, Hagan, and the conduct of those who were acting under his orders, on the ground that the questions propounded called for hearsay and incompetent evidence, not a part of the *res gestæ;* not competent as the declarations of an agent, made in the course of his agency; because it was not shown that the relationship of the agent to defendant was such as that his declarations and conduct would be binding on defendant, or that he had ever been authorized by his principal to thus speak and act, &c. That the trees were cut by the direction and under the orders of Hagan, the evidence was abundant to show. He testified he had orders to clear up 50 feet at this point from the centre of the track, and caused the trees to be cut; that his duties were to clear up and keep the right of way (which was claimed at this point) in order, and he had received his orders from the road-master. Mr. Clark, the superintendent, also testified, that Hagan had orders to clear up the right of way for 50 feet from the centre of the track, but not to go beyond this limit. Here then, was proof of declarations and conduct of an agent while in the performance of his agency, and an independent proof

of his authority, which rendered the evidence competent.—*Postal Telegraph Co. v. Lenoir*, 107 Ala. 643.

11. The defendant excepted to charges 3 and 7 given for plaintiffs. Mrs. Hill was not the owner of the land, and had no right to give the defendant's agent the privilege of clearing the way and cutting down the timbers, even if she did give such consent, which she denies ; and no one knew, or ought to have known this, better than the defendant, and its agent, Hagan. Indeed he testified : "I was acquainted with John W. Hill about twelve months before he died, in March, 1894. I knew up to the time he died, he owned the Fish Pond Lot (the one here in question), and that he had children, and that Emma K. Hill was his wife." He was bound, as a matter of law, to know that Mrs. Hill had no right to depredate these lands herself, even, or authorize him to do so, and this is all charge 3 correctly asserts.—*Lowery v. Rowland*, 104 Ala. 420. In *Allison v. Little*, 85 Ala. 517,—a similar case to this,—it was said : "It was no defense to this action, that the defendant had cut the trees by the instructions of certain persons, who had no lawful right to confer on him the authority to do so, although he believed they had such authority. He was the victim of his own credulity, and must be the sufferer by his negligence of inquiry, rather than visit the loss on another who is innocent. The fact that he acted in good faith, without the intention to trespass, was immaterial," &c. As to charge 7, in addition to what has just been said as to charge 3, it may be added, that the evidence shows, without conflict, that Hagan, the agent of the defendant, cut the trees under orders of the supervisor of the defendant, and without the consent of the plaintiffs, and there was, therefore, no error in giving said charge.

12. The statute does not require the malicious and evil intent postulated in the 2 charge asked for defendant, and it was properly refused. There is no evidence to show that Mrs. Hill was tenant in common with the plaintiffs, and there was no error in the refusal to give charges 3 and 8. Number 4 was properly not insisted on. Nor was there error in refusing charge 5. It was shown that the trees which were cut by Malone, were trees which Hagan told Harris to cut and Malone cut them for Harris, and they were close to the fence, on the

east side. It thus reasonably appears they were on plaintiffs' land, and cut by the direction or authority of Hagan. The fence was only 24 feet from the middle of the track.

Charge 10 assumes that the defendant had a right of way, of which there is no evidence, and it and Nos. 12, 13 and 14, and those numbered from 21 to 39, inclusive, were properly refused. The number of trees of each kind mentioned in the complaint to have been cut, was averred under a videlicet, and the proofs tended to show that some of each kind were cut and the number of each. No claim was made for any that were cut outside the right of way as claimed.

From what has been heretofore said the vice of charges 9, 11, 16 and 17 will appear.

All that is necessary in an action of this kind, is for the plaintiff to make out his case to the reasonable satisfaction of the jury. It is not incumbent on him to make out the averments of the complaint with certainty; or beyond reasonable doubt, as required by charge 20 which was refused.—*Rogers v. Brooks*, 105 Ala. 549; *Lowery v. Rowland*, 104 Ala. 421; *Roberge v. Burnham*, 124 Mass. 277; *O'Connell v. O'Leary*, 145 Mass. 312; 1 Greenl. Ev. § 13, n. p. 25.

It is scarcely necessary to add, that there was no room for the general charge as requested by defendant.

Affirmed.