540 So.2d 1357 (1989)
Ex parte GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY.
(In re UNIROYAL, INC., et al. v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al.)
87-1086.
Supreme Court of Alabama.
February 17, 1989.
Patricia K. Rea of Clark & Scott, Birmingham, for petitioner.
M. Christian King and William G. Somerville III, of Bradley, Arant, Rose & White, Birmingham, for respondents.
MADDOX, Justice.
This petition for a writ of mandamus presents the question of whether an "opinion letter" written by an attorney to an insurance company is discoverable by the insured in a declaratory judgment action involving an issue of coverage.
By its petition, Great American Surplus Lines Insurance Company (hereinafter referred to as "Great American") asks this Court to order Circuit Judge Josh Mullins to vacate his order compelling Great American to produce a "coverage opinion letter" of Great American's legal counsel.
For an understanding of the question involved in this petition, the facts may be briefly stated. This case arises out of a dispute between an insured and the insurer *1358 regarding coverage for claims brought in connection with certain landowners' suits involving water and soil contamination.
The lawsuits were filed against respondents and claimed damages for bodily injuries and property damage allegedly resulting from the presence of chemical contaminants alleged to have come from groundwater beneath respondents' manufacturing facility. After the lawsuits were filed, respondents demanded coverage pursuant to a policy issued to them by Great American. Great American denied coverage, basing its denial on exclusions contained in the policy.
After respondents questioned Great American's denial of coverage, Great American responded by notifying respondents that it would submit the matter to legal counsel for a review. In subsequent correspondence with respondents, Great American informed respondents that legal counsel had agreed with Great American's denial, and that Great American was standing by its original denial of coverage.
Respondents subsequently filed a complaint seeking a judgment declaring their rights under the policy. During the discovery phase of the ensuing litigation, respondents demanded the production of, inter alia, the "opinion letter" written by Great American's legal counsel relating to the denial of coverage. Great American objected to the request for production, but Judge Mullins entered an order compelling Great American to produce it.
The question before us is whether the "opinion letter" was discoverable.
Petitioner argues that the "opinion letter" falls within the purview of the attorney-client privilege and/or the "work product doctrine" and is, thus, not discoverable.
Respondents contend that the "opinion letter" is not protected under the work product doctrine because it was not solicited during, or in anticipation of, the lawsuit. Respondents further contend that any attorney-client privilege that might have been asserted was waived when Great American informed respondents that it had submitted the policy in dispute to legal counsel for an opinion. We disagree with the first contention and find the second contention inappropriate.
The attorney-client privilege, of course, is quite distinct from the work product doctrine. We will examine both.
The purpose of the privilege is to encourage candid "communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). See United States v. El Paso Co., 682 F.2d 530 (5th Cir.1982) cert denied, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473; "Developments in the LawPrivileged Communications," 98 Harv.L.Rev. 1450 (1985).
The advantage of the privilege ordinarily inured to the attorney and protected both his honor and the oath of his office. By the late eighteenth century, however, the emphasis shifted to the protection of the client. The privilege is now viewed as the exclusive prerogative of the client. VIII Evidence, J. Wigmore, § 2321 (J. McNaughton rev. 1961); L. Zell, "Scope and Application of the Attorney-Client PrivilegeAn Overview," 47 Ala.Lawyer 100 (1986); Connolly v. State, 500 So.2d 57 (Ala.Crim.App.1985), affirmed, 500 So.2d 68 (Ala.1986); "The Attorney-Client Privilege as Applied to Corporations," 65 Yale L.J. 953 (1956).
With respect to the facts before us, we find that the "opinion letter" represents a communication from the attorney to the client, and that it is, therefore, a privileged communication. Any further discussion of this issue is unnecessary.
The general rule is that an attorney cannot disclose the advice he gave to his client about matters concerning which he was consulted professionally, nor can the client be required to divulge the advice that his attorney gave him. Sawyer v. Stanley, 241 Ala. 39, 1 So.2d 21 (1941). Of course, the privilege can be waived. That is what respondents say happened here. They argue that "the evidence before the court dictated that the court find that the requested *1359 materials were not protected by the attorney-client privilege for two reasons." First, they say, "any privilege which might attach to the material had been waived" and, second, they argue that "because the attorneys' opinion was intended to be disclosed to Uniroyal, no privilege ever attached to the opinion."
While we recognize that the attorney-client privilege "may be waived, either directly or constructively, by the client," Swain v. Terry, 454 So.2d 948, 954 (Ala. 1984), and that this can be done by disclosing part of the communication, Louisville & Nashville R.R. v. Hill, 115 Ala. 334, 22 So. 63 (1897), we are of the opinion that no such waiver occurred in this case.
Respondents earnestly insist that this Court's case of Louisville & Nashville R.R. v. Hill, supra, is controlling; specifically, they argue that when the petitioner relayed to the respondents the fact that its attorney had advised it that there was no coverage, this action was a partial disclosure of the confidential communication, and, therefore, amounted to a waiver of the privilege. Because of the insistence by counsel that Louisville & Nashville R.R. v. Hill is controlling, we quote from that opinion:
"... Assignments from 15 to 23, inclusive, and 35 and 36 relate to the same matter and may be considered together. The witness, Hagan, under whose orders the trees were cut, was asked, while being examined by defendant, who introduced him, `Did you not consult a lawyer with reference to moving people back fifty feet?' He answered, `He did consult Capt. McClellan, railroad attorney.' On the cross-examination, the witness was asked when this was, the extent of the order, and what passed between him and the attorney. The evident object of the question as asked by defendant, was to show that the witness was acting in what he did on legal advice, and to get the benefit of his answer as made, that in committing the trespass he was not guilty of any willful disregard of plaintiffs' rights. The answer tended to show this. The questions propounded to him on the cross, which were objected to and allowed, were intended, and had a tendency to that end, to rebut the effect of the answer to the question in chief. Having brought out this evidence for the purposes intended, the plaintiffs had the right to cross him in the manner they did, to show that the company could not thus shield itself from liability for the alleged trespass.
"After the witness had been thus examined in chief and on the cross, and when the plaintiffs came to offer their rebutting evidence, Capt. McClellan was introduced as a witness by plaintiffs, and testified that the conversation referred to by said Hagan did not occur in 1893, as he states, but that it occurred in January, 1895, just before the trespass occurred, when Hagan told witness he had orders to move everybody back fifty feet from the railroad track, and McClellan said to him, `that he had better not attempt that, that he could not force people back, and if he did not mind he would get shot; that court houses were put up for the purpose of taking property from people, and all that he could do, was to request the people to move back, and if they did not move back, for him to report to the law department.' Defendant moved to exclude this evidence, on the ground that the witness was at that time, as the evidence tended to show, the attorney for defendant, and was consulted professionally. The objection was not valid. The defendant waited while its witness was being examined touching this matter, and made no objection to the examination, on account of professional confidence. It thus availed itself of all the advantages its witness gave of this interview, and when it was proposed to contradict him, and show what the facts were, to avoid the damaging effects of the evidence of the plaintiffs, this objection was sprung by defendant. If ever the defendant had the right to interpose such an objection, it waived it. It could not invite such an investigation, and reap the advantages of a partial and one sided statement from its witness of what occurred, and thereafter object to plaintiffs *1360 bringing out the whole conversation. Besides, it does not appear that the witness, Hagan, sought or had authority to seek, the advice of this attorney for this principal, or that he was not seeking it for himself and his own protection, and not for that of the defendant."
We are of the opinion that the factual context in which this Court found a waiver of the privilege in Louisville & Nashville R.R. v. Hill is materially different from the factual context here. We do not find that case controlling.
The work product doctrine is distinguished from the attorney-client privilege in that the latter applies only to communications between client and counsel. The work-product doctrine is broader in that it affords protection to all documents and tangible items prepared by or for the attorney of the party from whom discovery is sought "as long as they were prepared in anticipation of litigation or preparation for trial." C. Lyons, Alabama Rules of Civil Procedure Annotated, § 26.6 (2d ed. 1986); City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483 (E.D.Pa. 1962); "The Work-Product Doctrine: Protection, Not Privilege," 71 Georgetown L.Rev. 917 (1983); "The Attorney Work Product Doctrine and Carry-Over Immunity: An Assessment of Their Justifications," 47 U.Pitt.L.Rev. 675 (1986).
The seminal case on the work product doctrine is Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The doctrine announced in Hickman remains unimpaired and is clear and definite:
"We are ... dealing with an attempt to secure the production of written statements and mental impressions contained in the file and the mind of the attorney... without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice.
"* * * *
"In our opinion, neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstance. That is not because the subject matter is privileged or irrelevant, as those concepts are used in these rules. Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.
"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interest of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.
"Proper preparation of a client's case demands that he [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible waysaptly though roughly termed by the Circuit Court of Appeals in this case [Hickman v. Taylor,] [153 F.2d 212, 223] [(3rd Cir.1945)] as the `Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of *1361 cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."
Hickman, supra, 329 U.S. at 509-11, 67 S.Ct. at 392-94, 91 L.Ed. at 461-62.
In Connecticut Mutual Life Insurance Co. v. Shields, 16 F.R.D. 5, 7 (S.D.N.Y. 1954), it was determined that the work-product doctrine attaches to those documents prepared "with an eye toward litigation." See Ex parte State Farm Mutual Auto. Insurance Co., 386 So.2d 1133 (Ala.1980).
Ala.R.Civ.P. 26(b)(1) provides the general scope of discovery, and Rule 26(b)(3) further defines the requisites that must be met to discover materials prepared for trial:
"(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representatives of a party concerning the litigation."
Thus, if the "opinion letter" was "prepared in anticipation of litigation," its discovery could properly have been ordered only upon a showing by respondents that they had a "substantial need of the materials in the preparation of [their] case and that [they were] unable without undue hardship to obtain the substantial equivalent of the materials by other means." It is well recognized that the rules of discovery are to be liberally construed so as to provide both parties with relevant information necessary to proper litigation on all the facts. This liberality is not without restraints, however, and Rule 26(c) grants the trial court the power to control the use of the process and to prevent its abuse. Ex parte Morris, 530 So.2d 785 (Ala.1988).
Mandamus is the appropriate vehicle for testing the correctness of an order governing discovery. Ex parte Alabama Power Co., 280 Ala. 586, 196 So.2d 702 (1967). The question on review is whether under all the facts, the trial court abused its discretion. Assured Investors Life Insurance Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978).
We hold, based on our understanding of the above cited cases, that the "opinion letter" sought by respondent in the proceeding is immune from discovery because it falls within the "zone of privacy" protected by the work product doctrine. It is not to be inferred from what we have said here that the work product doctrine would apply in every case where a lawyer has prepared a written response to a client's question. Each case must necessarily rest on its own set of circumstances. Ex parte State Farm Mutual Auto. Insurance Co., 386 So.2d 1133 (Ala.1980).
The writ of mandamus is, therefore, due to be granted, and the trial court is hereby ordered to vacate the order compelling production of the "opinion letter."
WRIT GRANTED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.