[Clifton Iron Co. v. Jemison Lumber Co. *et als.* Clifton Iron Co. v. Curry.]

108  581
112  543
115  283
115  345

108  581
124  466

108  581
135  515

# Clifton Iron Co. v. Jemison Lumber Co. *et als.* Clifton Iron Co. v. Curry.

### *Action for Statutory Penalty for Cutting Trees.*

*Damages for cutting timber on another's land. What title necessary to maintain action for* —The grantee of the standing timber on land is not "the owner of the land" within the meaning of section 3296 of Code of 1886, so as to enable him to bring an action for the statutory penalty for the destruction of trees. The statute is penal and must be strictly construed.

APPEAL from the Circuit Court of Chilton.

Tried before Hon. N. D. DENSON.

The above cases are founded on similar facts, and are dependent on same assignments of error, and were argued and submitted together.

The action is to recover the statutory penalty for wilfully cutting trees on plaintiff's land without his consent. S. A. Curry was the owner of the land, and while in possession thereof, sold and conveyed to plaintiff all the timber, trees, logs and saplings on the land described in the complaint, with right of ingress and egress for purpose of cutting, hewing, sawing, &c. The deed was duly executed. The plaintiff offered said deed in evidence, but the defendant objected on the ground that the deed was not a conveyance of the land; counsel for plaintiff in this connection stated that the deed was offered for the purpose of showing the title under which plaintiff expected to recover, and admitted that said Curry owned all the interest in said land not conveyed by said deed. Thereupon the court sustained the objection of defendant to the admission of said deed, and plaintiff excepted. Plaintiff then offered to prove by a witness named Zuber that defendant had wilfully cut down a designated number of trees on said land without consent of plaintiff. The defendant objected to the admission of this testimony, which objection was sustained and plaintiff excepted. This was all the evidence, and the court at the written request of defendant gave the affirmative charge in his behalf, to which plaintiff ex-

cepted. The rulings of the court on the evidence and the giving of the affirmative charge for defendant are assigned as error.

KNOX, BOWIE & DIXON, for appellant.—No doctrine is more firmly settled in Alabama and many other states than that standing trees are real estate, and a conveyance thereof constitutes a separate freehold, and requires the same formalities as a conveyance of any other portion of the fee.—*Heflin v. Bingham*, 56 Ala. 566; *Riddle v. Brown*, 20 Ala. 412; *Mitchell v. Billingsley*, 17 Ala. 393; Washburn on Real Property Vol. 2, Star page 3; *Magnetic Ore Co. v. Marbury Lumber Co.*, 16 So. Rep., 632; Tiedman on Real Property, sections 9 and 10.

The words, real property are co-extensive with lands, tenements and hereditaments.—Code 1886, Sec. 2 Sub. 2. There may exist a double ownership in the same land. —*L. & N. R. R. Co. v. Boykin*, 76 Ala. 560; 2 Wash. on Real Property 375; *Riddle v. Brown*, 20 Ala. 412; *Williams v. Gibson*, 84 Ala. 228.

Land comprehends all things of a permanent substantial nature, being a word of very extensive signification, 12 Am. & Eng. Encyp. of Law 655 and note. 2 Black Com. 18. As to meaning of word "owner" see *McPheters v. Pearson*, 15 Col. 201; *Imperial Fire Ins. Co. v. Dunham*, 117 Penn. St. 461; *Schott v. Harvey*, 42 Ohio St. 458.

HOUGHTON & COLLIER, for appellee.—The statute is penal and must be strictly construed, and right of action in plaintiff must be shown to be both within the spirit and the words of the statute.—*Gunter v. Leckey*, 30 Ala. 591. The right of action is confined to the "owner" of the land.—*Allison v. Little*, 93 Ala. 150; *Rogers v. Brooks*, 99 Ala. 31; *Heflin v. Bingham*, 56 Ala. 566–575.

McCLELLAN. J.—These are actions by the Iron Co. against Curry and the Lumber Co. *et al*. respectively for the recovery of the statutory penalty prescribed by section 3296 of the Code for the destruction, injury, or removal of trees. Said Curry at one time owned the absolute fee in the land upon which the trees alleged to have been destroyed, injured, or removed were standing and

all interests in it.   Prior to the wrong complained of he executed a deed to the plaintiff whereby he conveyed to it, its "heirs and assigns forever," all the "timber, trees, logs and saplings" then on the land, vested in said Iron Company "the right to enter upon said lands, take possession of same for the purpose and to cut, fell, hew, saw, convert and manufacture, and haul or trans-. port on, upon and from said lands all the trees, logs, saplings of every sort and description upon the said land," and covenanted and agreed with said company "that no other person or corporation, natural or artificial, shall be granted or have the right to construct, build, buy or use any road, tramway or railroad over or across or upon said land so long as the grantee shall not have cut and taken all the timber, trees &c. owned and conveyed to said company on said land."   The deed also contains a covenant of seizin in fee, a covenant against incumbrances and a warranty of title.   This instrument was plaintiff's only muniment, and upon it alone it asserted such interest in the land as entitled it to maintain these actions.   The trial court held that plaintiff was not the owner of the land within the meaning of said section of the Code, and hence could not maintain an action thereunder.

The section in question is in the following language: "Any person who cuts down, girdles, deadens or destroys, or takes away, if already cut down or fallen, any cypress, pecan, oak, pine, cedar, poplar, walnut, hickory, or wild cherry tree, or sapling of that kind, on land not his own, willfully and knowingly, without the consent of the owner of the land, must pay to the owner ten dollars for every such tree or sapling; and for every other tree or sapling not hereinbefore described, so cut down, deadened, girdled, destroyed, or taken away by any person, he must pay to such owner the sum of five dollars."   This is obviously and confessedly a penal statute, and must be strictly construed, at least to the extent and in the sense that no case shall be holden to be covered by it which does not fall naturally and without constraint within some fair and accepted definition of its words, in the light of its context; and failing this, or beyond this, the supposed evils it was intended to meet and correct cannot be considered to authorize or

[Clifton Iron Co. v. Jemison Lumber Co. *et als.* Clifton Iron Co. v.
Curry.]

justify the enlargement of its scope and operation by ju-
dicial interpretation. We do not think it can be ex-
tended to the cases made by the Clifton Iron Co., for that
the plaintiff is not "the owner of the land" within any
fair significance of those terms as they were employed
by the legislature, or within several decisions of this
court holding that the penalties imposed by it are for
the benefit of, and recoverable only by, the land owner—
*Allison v. Little*, 93 Ala. 150; *Rogers v. Brooks*, 99 Ala.
31. In reaching this conclusion we have not been un-
mindful of the variant shades of meaning which variant
circumstances may cast upon the word "owner," nor of
the adjudged cases giving to it different interpretations
in unlike connections, to which counsel have called our
attention, nor yet to the well established and, with ref-
erence to this case, more concrete, proposition that all
that is on, or under, or above the surface of the earth
are but constituent elements of what we denominate
land, and that, of consequence, one who owns only min-
erals in the bowels of the earth, or only trees which
grow upon its surface is, to speak with legal precision
and technically "the owner of land." But at the same
time, we cannot overlook the fact that in common par-
lance the phrase "the owner of land" is primarily un-
derstood to mean the surface proprietor, having also,
more as incidents than otherwise, the mineral and tim-
ber interests, and not one who owns only the one or the
other, or even both, of these interests, but not the sur-
face. Such limited proprietorship is in common speech
well nigh universally accompanied by some reference to
the limitation, as, for instance, that "A. B. owns the
timber on C's land," or "E. F. has purchased the min-
eral rights in G's land," &c. &c. Not only is this the
general acceptance of the term in ordinary use, and,
therefore, without more, to be presumed, in the absence
of contrary indicia in the context, to have been in the
minds and to have bounded the intentions of legislators
in the enactment of this section; but beyond all this, the
statute itself bears intrinsic evidence that this only is
the sense in which the "owner" of land was referred to
by the General Assembly. They considered and treated
trees growing upon land, and the land upon which the
trees grew as two separate and distinct things; they un-

mistakably evince an understanding on their part that
the owner of land, within the intent and meaning of
this enactment, is the owner of the surface of the ground,
and not the owner of trees growing upon it or logs lying
on it.   They do not refer to trees as land, but as being
"on land."   They do not give the remedy against a per-
son who shall cut trees not his own, but against him
who shall cut trees "on land not his own."   They do
not impose the penalty for cutting trees without the
consent of the owner of the trees, but for cutting trees
"without the consent of the owner of the land."   This
view is strengthened by a reference to section 3297 of
the Code, which was enacted originally at the same time
as section 3296, and as a part of the same statute.—Acts
1861, p. 61.   That section has reference to fruit and or-
namental trees, &c., inclosed on *premises* not belonging
to the person charged with the cutting.   The evil aimed
at was the same, and the remedy given for its redress
was the same under both sections, except that forest
trees were intended to be protected in the one case, and
fruit and ornamental trees in the other.   The latter sec-
tion gives the remedy to the owner of the premises—
the wrongdoer must cut trees "on premises not his
own"—a phrase which cannot be contorted into cover-
ing the owner merely of the trees ; and this has the same
meaning, so far as the question we are considering is
concerned, as "the owner of the land" in the first sec-
tion ; this expression not having been used also in the
latter section apparently only because it would have em-
braced uninclosed land which it was not the purpose of
the legislature to protect in respect of fruit and orna-
mental trees, &c., &c.   Moreover, this section clearly
evidences a purpose to give the penalty only to the
owner of both the land and the trees.

On these several considerations we conclude that one
who is not the "owner" of the land in the ordinary
meaning of that word, implying proprietorship of the
surface of the earth, is not within the protection of the
statute, nor entitled to maintain an action for the pen-
alty it prescribes.   It follows that with all of plaintiff's
proposed evidence before the jury in each of the cases,
the trial court would have been authorized to give the
affirmative charge for the defendant.   The judgment
must be affirmed.