# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1896.

## Gravlee v. Williams.

*Action to recover Statutory Penalty for Cutting Trees.*

1. *Statutory penalty for cutting trees ; who can maintain action to re-cover.*—The right of action to recover the statutory penalty for cutting trees (Code of 1886, § 3296), is given, not to the person in posses-sion, but to the owner of the land, whether he was in possession or not at the time the waste complained of was committed ; and in this stat-ute the word "owner" is limited to the *owner* of the legal estate in the land.

2. *Same ; vendee holding a bond for title to the land can not maintain the action.*—Neither the vendee of land in possession under an execu-tory contract of sale holding the vendor's bond for title, covenanting to make title on full payment of the purchase money, nor the assignee of such a bond, in possession, can maintain an action against the ven-dor, who enters before the purchase money is fully paid and cuts or removes trees from the land, to recover the penalty given by the statute to the owner of the lands (Code of 1886, § 3296) ; such vendee, and therefore, his assignee, being only the equitable owner, and not the owner of the legal title to said lands.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. JAMES J. BANKS.

This action was brought on June 28, 1894, by the ap-pellant, E. L. Gravlee, against the appellee, L. W. Wil-liams, to recover $1,640, as the statutory penalty (Code of 1886, §3296) for the cutting of certain trees and sap-lings on plaintiff's land.

Issue was joined on the plea of the general issue. The plaintiff's evidence tended to show the following facts : On the 17th day of January, 1891, W. G. Gravlee en-tered into a contract with the defendant for the purchase of the lands described in the complaint from defendant

for $1,000, the defendant at the time of the said contract being the owner of said lands. W. G. Gravlee paid cash $250, and gave his notes for the deferred payments; and defendant and his wife executed and delivered to said W. G. Gravlee their bond for title to said lands which was introduced in evidence. No deed was made by defendant to said W. G. Gravlee for said lands; but W. G. Gravlee held said lands under said bond and said lands were wild wood lands with no improvements thereon whatever, chiefly valuable for the timber trees growing thereon. On the 12th day of January, 1893, W. G. Gravlee sold the said lands to plaintiff and indorsed, transferred and assigned his said bond for title to plaintiff. When plaintiff bought said lands from W. G. Gravlee he agreed to pay the notes that he had given to defendant, and defendant was at once informed of this arrangement, and made no objection to it, and plaintiff paid said notes as they became due without default. On or about the first part of the month of February, 1894, defendant cut down and carried away from said lands 136 oak trees, one pine tree and 34 oak and 34 pine sapplings, and made cross-ties out of said trees and sold the cross-ties. Immediately after said trees were cut, but not before, on plaintiff paying the defendant the balance of the purchase money for said lands, which, however, was not then due, defendant and his wife made, executed and delivered to plaintiff a deed to said lands, dated the 20th day of February, 1884.

This being all the evidence, the court at the request of defendant, gave the following written charge to the jury: "If the jury believe the evidence, they will find for the defendant." To the giving of this charge the plaintiff duly excepted. There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the giving of the general affirmative charge in favor of the defendant, and the judgment rendered.

APPLING & McGUIRE, for appellant.—1. Since the right of action is given by said statute to the owner of the lands, it is of vital importance to know what the legislature meant by the use of said phrase—what significance is to be attached to the word "owner." The word "owner" is not a technical word, and is a term of very broad signification; and, as

defined in the dictionaries and construed by the courts, it is almost invariably held to mean the beneficiary rather than the holder of the naked legal title, both as to real and personal property.—17 Amer. & Eng. Encyc. of Law, 299, *et seq.*; *McKee v. Wilcox*, 11 Mich. 358; *Orr v. Shraft*, 22 Mich. 261; *Choteau v. Thompson*, 2 Ohio St. 23; *Tyler v. Jewett*, 82 Ala. 99; *Tompkins v. A. &c., R. R. Co.*, 21 S. C. 420; *Tutt v. Port Royal, &c., R. Co.* 28 S. C. 388; *Gitchell v. Kreidler*, 84 Mo. 476; *Gilligan v. Board*, 11 R. I. 258; *Wellington v. State*, 52 Ark. 266; *Wilder v. Haughey*, 21 Minn. 101; *Hartman v. Munch*, 21 Minn. 107.

There is no such significance in the word "owner" that it should be held to embrace only the holder of the legal estate, as was done in this case. This and other courts have construed the word time and again in criminal and civil cases, and have always given it a broad and liberal construction.—*Tyler v. Jewett*, 82 Ala. 98; *Youngblood v. McAnally*, 88 Ala. 516; Clark's Crim. Law, §§ 807, 869, 977-8, 1056; *Beatty v. Brown*, 76 Ala. 267.

The point in this case, upon which the general charge was given for defendant, viz., that Mrs. Gravlee was not the "owner of the lands" in the sense in which that phrase is used in said statute, for the reason that she did not have the legal title at the time of the trespass, has been decided by this court contrary to said ruling in a case like this, upon a construction of said statute (Code of 1886, § 3296). We refer to the case of *Allison v. Little*, on the second appeal, as reported in 93 Ala. 150.

The relationship exists between the vendor and vendee under an executory contract of sale, such as will give the vendee in possession the right to maintain an action of this character to recover the statutory penalty.—*Moses v. Johnson*, 88 Ala. 517; *Allison v. Little*, 93 Ala. 152; *Turner v. Glover*, 101 Ala. 294.

COLEMAN & BANKHEAD, *contra.*—There is but one question raised by the record, and that is whether or not this statute gives a right of action in favor of the equitable owner against the legal owner. The statute provides that any person who is not the owner is liable to the penalty. This is a highly penal statute, and like all penal statutes must be strictly construed.—*Pos. Tel. Co. v. Lenoir*, 107 Ala. 640; *Grooms v. Hannon*, 59 Ala. 510.

[Gravlee v. Williams.]

2. In a court of law the vendor executing a bond for title is the owner, while in a court of equity the vendee is the owner, and the retention of the title by the vendor is simply a security for the debt. The vendee in such contract occupies a position similar to a mortgagor. The rights conferred by the two contracts are analogus. In the two cases, the legal ownership is simply a security for a debt.—*Ashurst v. Peck,* 101 Ala. 499 ; *Wimbish v. Montgomery, &c., Asso.,* 69 Ala. 575 : *Lowery v. Peterson,* 75 Ala. 109 ; *Bankhead v. Owen,* 60 Ala. 457.

3. There is really but one difference in the two contracts, and that is as to the possession. In the absense of a stipulation to the contrary the mortgagee has the immediate right of possession.—3 Brick. Dig. 651, § 251 ; and in the absense of a stipulation to the contrary the vendee has the immediate right of possession.—*Reed v. Davis,* 4 Ala. 83 ; but the possession is immaterial in an action to enforce this penalty. The owner of the land without regard to the possession may enforce it.—*Allison v. Little,* 93 Ala. 150 ; *Rogers v. Brooks,* 99 Ala. 31.

4. The owner of the legal estate is the person who in contemplation of the statute is the party authorized by the statute to sue for this penalty.—*Allison v. Little,* 85 Ala. 512 ; *Allison v. Little,* 93 Ala. 150. To permit this action to be maintained would be to authorize the *cestui que trust* to sue the trustee in a court of law. There has been no decision in this State as to the meaning of the word "owner" as used in this statute, but there are similar statutes in other States, and the courts of these States in construing this word "owner" say that it means the owner of the fee.—*Behymer v. Odell,* 31 Ill. App. 350 ; 26 Amer. & Eng. Encyc. of Law, 567, and authorities cited in note ; *Ruggles v. Nantucket,* 11 Cush. (Mass.) 433 ; *Frank v. Arnold,* 73 Iowa. 370.

BRICKELL, C. J.—The question the case presents, is, whether the assignee of a bond of the vendor of lands, covenanting for the making of title to the obligee on the full payment of the purchase money, can maintain an action against the vendor, who enters before the purchase money is fully paid, cutting and removing trees from the lands, to recover the penalties given to the owner of lands, by the statute.—Code of 1886, § 3296. Uniformly, the statute has been regarded as penal, and of consequence, subject to a strict construction, by which

is intended that it is not to be extended beyond the plain meaning of its words. Or, as it was expressed in *Clifton Iron Co. v. Curry*, 108 Ala. 581, "No case should be holden to be covered by it, which does not fall naturally, and without constraint, within some fair and accepted designation of its words, in the light of its context."—*Postal Telegraph Co. v. Lenoir*, 107 Ala. 640; *Russell v. Irby*, 13 Ala. 131.

The bond for title was assignable, and if, as seems to have been true, the assignment was absolute, the estate and interest in the lands which was vested in the assignor passed to the assignee. The vendor having notice of the assignment, the assignee succeeded to the place and relation the assignor had occupied, and could pursue all remedies, legal or equitable, (and no other), for the enforcement of his rights or interests, which the assignor could have pursued.—*Brown v. Chambers*, 12 Ala. 697; *Skinner v. Bedell*, 32 Ala. 44; Waterman, Specific Performance, § 68.

The relation of the vendor and the vendee of lands, the vendor covenanting to convey title on the full payment of the purchase money, has been of frequent definition. Until the purchase money is fully paid, the vendee has but an imperfect equity. The vendor has the legal estate, and in courts of law is regarded as having the right to and in the lands; the sole exclusive right. For the recovery of possession, he may maintain ejectment against the vendee, compelling him to resort to equity for redemption, or rather for specific performance.—*Bankhead v. Owen*, 60 Ala. 457, and authorities cited. As the estate of the vendor, the lands are subject to levy and sale under execution, and the purchaser at the sale may maintain ejectment and recover possession from the vendee—the equity with which he is invested, will not in a court of law protect his possession.—*Nickles v. Haskins*, 15 Ala. 619; *Trammell v. Simmons*, 17 Ala. 411; *Sellers v. Hayes*, Ib. 749; *Chapman v. Glassell*, 13 Ala. 50; *Elmore v. Harris*, Ib. 360. The relations of the parties, in a court of equity, are essentially different. Acting upon a favorite maxim, of regarding that as done which ought to have been done, or which the parties contemplate shall be done in the final execution and consummation of the contract, for most purposes, a court of equity regards the contract as specifically exe-

[Gravlee v. Williams.]

cuted. The vendee is regarded as the equitable owner of the land—the vendor is the owner of the purchase money—to the land a trust attaches; the vendor is seized of it for the use of the vendee. The trust binds the land, while the legal estate remains in the vendor; and it binds the heir or devisees succeeding to it, and all claiming by or under the vendor, except *bona fide* purchasers without notice. As land, the vendee may convey or devise it; and as land it descends to his heirs.—*Wimbish v. M. M. B. & L. Asso.*, 69 Ala. 575; *Ashurst v. Peck*, 101 Ala. 499. The dual relation which vendor and vendee thus bear to each other, of one character in a court of law, and of an essentially different character in a court of equity, is analogous to, if not identical with, the relation which mortgagor and mortgagee are deemed to bear to each other.

The statute is intended for the protection of the freehold from spoliation or destruction; from that which at common law would be deemed waste. The remedy is given exclusively to the *owner* of the freehold, and he may pursue it though he have not the possession.—*Allison v. Little*, 93 Ala. 150; *Turner v. Glover*, 101 Ala. 289; *Clifton Iron Co. v. Curry*, 108 Ala. 581. Whatever may be the varied meanings of which the word *owner* is capable, and whatever may have been the signification attached when employed in other connections, or in reference to other subject matters, in this statute it is limited to the *owner* of the legal estate in lands. This is its precise meaning, and it would be an unwarrantable interpretation, violative of the cardinal rule that penal statutes are to be strictly construed, if it were extended so as to comprehend one who has but an equity, of which courts at law cannot take cognizance.

The vendor and vendee of lands, the vendor retaining the legal estate, covenanting to convey it, on the payment of the purchase money, stand in a relation analogous to that of mortgagor and mortgagee. If the mortgagor is in possession and is committing waste, the law day not having passed, a court of equity, at the instance of the mortgagee, will intervene, and by injunction restrain the waste.—*Coker v. Whitlock*, 54 Ala. 180. The same doctrine is applied if the vendee is in possession committing waste, lessening the security of the vendor for the payment of the purchase money.—

[Gravlee v. Williams.]

*Moses Bros.* v. *Johnson*, 88 Ala. 517. A mortgagee entering, and committing waste by the destruction of timber on the mortgaged premises, is liable to the mortgagor for the injury to the freehold—for the diminution of its value by reason of the destruction of the timber.— *Perdue* v. *Brooks*, 85 Ala. 459. If the vendor had resorted to a court of equity to foreclose or enforce his lien for the payment of the purchase money, the appellee would have been entitled to recover for the injury to the freehold, its dimunition in value, by reason of the destruction of the timber; or, it may be, if he had been sued at law, he would have been entitled to an abatement of the purchase money to this extent. This is the full measure of his rights, and the full extent of his remedies. It is not contemplated that parties standing in the relation of mortgagor and mortgagee, or of vendor and vendee, shall recover the one from the other, the penalties given by the statute. If the mortgagor or vendee is in possession he is in possession by the consent of the mortgagee, or of the vendor, and if he is cutting and removing timber, destructive to the security, a court of equity will intervene. If the vendor, or mortgagee enter, and cuts or removes timber, the remedies of the mortgagor or vendee, are plain and adequate, furnishing full compensation. Neither can, or ought to be subjected to the mere arbitrary penalties, the statute imposes not on the theory of compensation, but of punishment for a tort. The case affords an illustration of the injustice, the absolute injustice, which would result from an application of the statute to parties standing in these relations. The original purchase money of the lands was one thousand dollars, which had been partially paid before the waste complained of was committed. The purchase money was paid and the appellant now sues to recover of the vendor the statutory penalties aggregating sixteen hundred and forty dollars, not because the timber was of that value, nor because such was the diminution of the value of the lands, but standing on the letter of the statute, such are the penalties it imposes. Whether he was quickened into the payment of the purchase money by the expectation of the recovery of the penalties, may be matter of speculation. But that he was not the *owner*, the statute intends to protect, we deem plain.

35

As is insisted by the counsel for the appellant, deeds, as between the parties, are sometimes deemed to relate back from the day of delivery, and take effect from the time of the contract of purchase, or from the time of the contract to convey. This fiction of relation is intended for the advancement of the right, and not for the working of wrong and injustice. Under its operation parties cannot be converted into wrongdoers and subjected to penalties, as they may not by its operation be converted into violators of the criminal law.

We find no error in the record, and the judgment must be affirmed.

Affirmed.