# Cotton *v*. The State.

*Indictment for Rape.*

1. *Evidence identifying defendants as perpetrators of offense.*—Where the defendants deny their guilt, though identified by the prosecutrix, and show that, before their arrest, she had given a description of the guilty parties which did not suit their appearance, it is competent for the prosecution to prove that, after their arrest, she identified and pointed them out among a large number of prisoners.

2. *Objection to party's own evidence.*—A party can not object or except to the admission of evidence which he has himself elicited.

3. *Privileged communications between attorney and client.*—An officer, having the legal custody of a prisoner, should allow him every reasonable opportunity, consistent with his safe keeping, for private consultation with his attorney; yet he may testify to communications made in his presence, although they might be privileged as between the attorney and his client.

4. *Evidence of prior contradictory statements of defendant.*—The defendant testifying in his own behalf to an *alibi*, it is competent for the prosecution to prove his prior contradictory statements, by affidavit or otherwise, as to his whereabouts on the day named; but evidence of prior statements made, not inconsistent with his testimony on the trial, is not admissible.

5. *Charge on part of evidence.*—Where the evidence adduced by the prosecution is both direct and circumstantial, a charge requested, as to the sufficiency of circumstantial evidence to authorize a conviction, ignoring the direct evidence, is properly refused.

6. *Special venire in capital case.*—When the arraignment and the trial, in a capital case, occur in the same week, the special *venire* should include, not "those summoned on the regular juries for the week" (Code, § 4320), but only those who have appeared, and who constitute the regular juries in fact.

FROM the Circuit Court of Dale.

Tried before the Hon. JESSE M. CARMICHAEL.

The defendants in this case, Greene Cotton and William Hendrix, freedmen, were jointly indicted, tried and convicted of committing a rape on Martha Fralish, and were sentenced to the penitentiary for life. "On the trial," as the bill of exceptions states, "evidence was produced by the State tending to show the defendants' guilt. The prosecutrix swore positively to the commission of the offense, and that the defendants committed it; also, that it was the first time she ever saw them. The defendants produced evidence tending to prove an *alibi*, and that they were not guilty; averring positively that they did not commit the offense, and that they never were in the vicinity where it was committed. The pros-

[Cotton v. The State.]

ecutrix, while on the stand as a witness, was asked by the
defendant, if she did not, in the evening after she said the
offense was committed, and at the place where she said it
was committed, in describing the parties who she said com-
mitted it, tell Mr. Baker and Mr. Cherry, witnesses for the
defense, a description of the men that would not conform to
defendants; and she answered, that she did not. The de-
fendants then introduced said Cherry and Baker, who testi-
fied that the description she gave them, at the time and place
named, did not correspond to the defendants. The State
then asked the prosecutrix, if nine other negroes were brought
to her for identification soon after the offense was committed,
and before the defendants were arrested, and if she identi-
fied either of the nine as the guilty parties; and she answered,
that they were brought before her, and that she did not
identify any of them." The defendants objected to each of
these questions and answers, and excepted to their allowance.
"The State then asked the prosecutrix, if she went to Mil-
ton, Florida, and there saw the defendants; and she said, yes.
The State then asked her, if she saw them in jail in Ozark
in January, 1888, and there identified them; and she an-
swered, yes."

"The defendants introduced one Hatton as a witness, and
asked him, if he was at the place where the offense was said
to have been committed; and he replied, that he was at a
place where said Baker and Cherry told him the offense was
committed, and that said Baker fell down and rolled over, to
see if he would leave any signs of scuffling. The defendants
then asked him, if the prosecutrix told him that was the
place; and he answered, no. The defendants then moved to
exclude the said testimony of Hatton, 'that he was at a place
where said Baker and Cherry told him the offense was com-
mitted'; and they excepted to the overruling of their mo-
tion."

The defendants also objected and excepted to the testimony
of one Mosely, the county jailor, as to declarations he had
heard Greene Cotton, while in his custody, make to one J. C.
Cotton, his attorney; the facts being thus stated in the bill
of exceptions: "After the proper predicate had been laid as
to time and place, the State proposed to ask the defendant
Cotton, if he did not tell said Mosely that he was at West-
ville on the 25th October, 1887, on Maj. Landrum's front (?)
for nearly a half-day, and that he met at DeFuniack, Florida,
on the 26th October, a lawyer from Milton, Florida, named

[Cotton v. The State.]

Perrinote, and talked with him, and tried to borrow money from him, saying that he was strapped, and that he could prove these facts, if he had that lawyer here. The evidence showed that said Mosely was the jailor at the time, and had the charge and custody of the defendants; and that said Mosely heard said defendant make said statements to one J. C. Cotton, a practicing lawyer, who was defendants' attorney at the time. The defendants objected to the question put to said Greene Cotton, and excepted to its allowance. The court having permitted said Mosely to testify to the declarations of said Greene Cotton to his attorney, J. C. Cotton, defendants offered said J. C. Cotton as a witness, and asked him if said Greene Cotton, at the time mentioned by Mosely, told him that he was in DeFuniack on Wednesday, October 26th; and he replied, that Greene Cotton told him he was in DeFuniack on Thursday, and in Milton on Wednesday, October 26th. The State then asked J. C. Cotton, if said Greene Cotton did not tell him that, on the 25th October, he was a half day on Maj. Landrum's front (?) in Westville, Florida; which the witness declined to answer, because it called for a privileged communication. The State then moved to exclude that part of said J. C. Cotton's testimony, wherein he said that Greene Cotton told him he was in DeFuniack on Tuesday, and in Milton on Wednesday, October 25th, this being the conversation testified to by Mosely. The witness, being informed by the court that he need not testify to confidential communications between himself and his client, asked to withdraw said statements; which was done, and no objection or exception taken."

"The defendants requested each of the following charges in writing: (1.) 'To justify conviction, circumstantial evidence ought to exclude a rational probability of innocence; and a conviction ought not to be had on circumstantial evidence, where direct and positive evidence is attainable.' (2.) 'The true test of the sufficiency of circumstantial evidence is, whether the circumstances as proved produce moral conviction, to the exclusion of every reasonable doubt.' (3.) 'The humane provision of the law is, that upon circumstantial evidence there should not be a conviction, unless to a moral certainty it excludes every other reasonable hypothesis than that of the guilt of the accused.' The court refused to give either of said charges, and to such refusal defendants excepted."

[Cotton v. The State.]

H. L. MARTIN, for the appellants.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—The defendants in the court below were identified by the prosecutrix, as the perpetrators of the crime. It was attempted to be shown that, before their arrest, she had given descriptions of them, which were not accurate. The purpose, and only legitimate effect of this testimony was, to engender in the minds of the jury a doubt as to the certainty of her subsequent identification of the parties. To meet this tendency, it was entirely competent to show that she fixed upon these men as the criminals, out of a number who had been brought before her. To be able to select one or more out of a multitude, or out of any greater number, is one of the ordinary tests of the correctness of the identification; and the fact that the prosecutrix did this, goes to show that, although she may have expressed an inaccurate description, she evidenced no hesitation or uncertainty in pointing out the defendants, when they and others were brought before her.

A defendant can claim no advantage, on appeal, for an error which he superinduced; nor can he predicate an assignment of error on the refusal of the trial court to exclude testimony, which he has adduced before the jury. The action of the Circuit Court in overruling the defendants' motion to exclude the evidence of the witness Hatton, whether erroneous or not, abstractly considered, can not avail the appellants.—*Ex parte Winston*, 52 Ala. 421; *Shelton v. State*, 73 Ala. 5.

The rule as to the inviolability of professional confidences applies, as between attorney and client, only to communications made and received for the purposes of professional action and aid, and the secrecy imposed extends to no other persons than those sustaining to each other the confidential relationship, except the necessary organs of communication between them, such as interpreters, and their own agents and clerks. If the parties choose to hold their conferences in the presence and hearing of third persons, whether they be officers of the law, and, as such, charged with the custody of the client, and hence necessarily present, or indifferent bystanders, there is no rule of law which forbids such third persons to depose to facts thus coming to their knowledge. The evidence of the witness Mosely, who was the jailor, as

[Cotton v. The State.]

to what one of the defendants told his attorney in his presence, was properly admitted. We, of course, are not to be understood as intimating that it is not the duty of officers, having the custody of alleged criminals, to afford them every opportunity, consistent with the safe-keeping of their prisoner, for private consultation with their attorneys.

The defendant Greene Cotton having testified that he was in Milton, Florida, on the 26th day of October—the day on which the offense was committed—it was entirely competent for the State to impeach and discredit his evidence in this connection, a proper predicate therefor having been laid, by showing that, either in court or elsewhere, he had made statements, by affidavits or otherwise, as to his whereabouts on that day, which were inconsistent with his statements on the trial.

We are unable to see that the testimony adduced by the State, to the effect that the defendant Hendrix had sworn, on his application for a continuance made at a former term, that there was a large number of witnesses, at different points in Florida, whose names were unknown to him, and could not be ascertained in time to be stated in the application, &c., was pertinent to any issue in the case. As the matter is presented in the bill of exceptions, this statement is not inconsistent with any fact deposed to by this defendant on the trial; and it was therefore irrelevant for the purpose of impeachment, for which it appears to have been introduced. It should have been excluded.

The evidence which tended to establish the guilt of the defendants, was both direct and circumstantial. The charges requested by the defendants ignored entirely all the positive testimony in the case, and required the court to direct the attention of the jury alone to the circumstances which, in greater or less degree, bore upon the question of guilt. Their tendency was to obscure the most potent facts adduced before the jury, and to authorize a determination of the question of guilt *vel non* upon a consideration of a part, and that probably the least important part of the evidence. They were clearly misleading, if not in a certain sense abstract, and were properly refused.—*A. G. S. R. R. Co. v. Jones,* 71 Ala. 487.

In the case of Vandy Dick, at this term, *ante,* p. 61, it was held that an order for the organization of a special jury under the law applicable to Dale county, which directed the sheriff to summon "sixty persons, including those summoned on the

[Burney v. The State.]

regular juries for the week," was irregular and erroneous, when, as in that case, and in this, the order for the jury, and setting a day for the trial, was made, and the trial had in the same week. Such was the order in this case; and on the authority of the case referred to, the judgment of conviction will be reversed, and the cause remanded.

Reversed and remanded.