## Standard Fire Insurance Company v. Smithhart.

(Decided March 25, 1919.)

### Appeal from Henderson Circuit Court.

1. Witnesses—Attorney and Client—Privileged Communications.— Although the relationship has ceased between them, an attorney cannot testify as to communications made to him in his professional character without the consent of his client.

2. Witnesses—Attorney and Client—Privileged Communications.— In an action against an insurance company for the loss of her property by fire, the defense being that appellee procured the house and contents to be burned for the fraudulent purpose of collecting the insurance, it was permissible to prove a communication made by her in reference to her connection with the burning of the house by the attorney to whom the communications were made, such communications not having been made to the attorney in his professional capacity, and therefore not privileged.

JOHN C. WORSHAM for appellant.

McCLAIN & PENTECOST for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, Sallie Smithhart, owned a house, in Henderson, upon which and its contents, she carried four insurance policies, in the appellant Standard Fire Insurance Company, which insured her against damages, by fire, to the house and contents insured. The larger part of the house and its contents, were destroyed, by fire, and the appellant, company, having refused to pay the damages, she instituted this action against the insurance company, upon the policies, to recover the damages. The trial resulted in a verdict of the jury in her favor, and a judgment of the court, in accordance with the verdict. A motion for a new trial was made and denied, and the insurance company appeals.

The only ground upon which a reversal is sought, is that an error prejudicial to the substantial rights of the appellant was made by the trial court, in excluding from the jury, certain evidence offered by the appellant. One of the grounds, relied upon, by the appellant, in the defense of the action, was, that the burning of the house and goods, was not accidental, but, was of incendiary origin, and that the appellee procured the house and contents to be burned, with the fraudulent purpose of

collecting the amount of the insurance, carried upon the house and its contents. This plea was denied by a reply. Upon the trial, the appellee stated, that she was not at home, at the time, the house was burned, but had left her house, on the evening before, at about 4:30 o'clock and had gone to Evansville, Indiana, for the purpose of seeing a physician; the house was burned, during the following night; she left the house in charge of the caretaker, with directions to close the window shutters and to lock the doors of the house; that some days previous to the time mentioned, one Gus Stevens came to the door of her house, to ask if she desired any painting to be done; that after her return to her home, she engaged the services of an attorney, to prepare the proofs of the loss, and to collect the insurance, and thereafter, the attorney informed her, that the company declined to pay the damages, upon the ground, that she had burned the property; the policies were then returned to her, by the attorney, and she, thereafter, secured other attorneys and instituted the suit. The chief, of the fire department of the city, testified, that he arrived, at the place of the fire, within a few minutes after the alarm had been given, and the house was then ablaze within, and the shutters to as many as two windows, upon one side of the house, were fastened, by nails, driven through the foot of the shutters. The caretaker testified, that he closed the shutters between three and four hours before the fire, but did not fasten them with nails. The house was discovered to be on fire, about one o'clock in the night. The attorney, whom appellee had at the first employed, was called as a witness by the appellant, and his employment by the appellee and that he had prepared the proofs of the loss, and his services engaged to collect the insurance upon the policies by suit, if necessary, and his submission of the proofs to the company, and its refusal to pay the damages was proven by the attorney. The appellant then offered to prove, by the attorney, that he informed the appellee of the refusal of the company and the ground, upon which it based its refusal and that she stated to him, that she did not burn the house, nor have anything to do with its being burned, but, that at a time before it was burned, John Puckett, suggested to her, that as the business, in which she was engaged was dull, it would be a good scheme for her to have the house burned, and that he would at-

tend to the burning of it for her; she said to Puckett, that she would not have anything to do with setting it on fire, but, he said, that if she would let him know of a time, when she was going to leave town, he would attend to the matter, and for her, to call him up; that Puckett said further, that he would send Gus Stevens to her house, and that Stevens would come with a paint bucket and ask to be shown the house and for her to let him see the house, and then telephone to him (Puckett) when she was going to be out of the town, and the house would be burned, whilst she was out of the town, and that on the afternoon, preceding the night, upon which the house was burned, and before she left for Evansville, she telephoned Puckett, that she would leave for Evansville that night and would spend the night in Evansville, and that the house burned during that night. Upon the objection of appellee, the court refused to allow the attorney to make the statements, above stated. It was then offered to be proven, by the attorney, that the appellee directed him to deliver the policies sued on, to the attorneys for the company, for the purpose of being cancelled, and that in accordance with this direction he did deliver the policies to the attorneys for the company, who promised, that no criminal prosecution should be instituted against her, but, in a short time, the attorneys, for the company, returned the policies to the witness, with an explanation, that because of a disagreement between them and the company, they did not represent the company any further, and that witness could collect the policies, if he desired, and that he then, returned them to the appellee. The above proposed statements were, also, excluded, upon the objection of the appellee.

So far as the offered evidence, was a statement of conversations, or communications or agreements, between the attorneys of the company and the witness, they were properly excluded upon well known grounds, but, as regards the statements of the appellee made to the attorney, and which were offered to be proven by him, a question is presented, which has not, heretofore, been determined, in this jurisdiction. The witness, at the time, the statements were made to him, by appellee, was representing her, in his professional capacity, as an attorney, with reference to her claim, under the policies, against the insurance company, and the statements, made by her,

directly related to the nature of her claim and her legal rights, with reference to same. The common law had a rule, which determined the right of an attorney to give evidence touching statements made to him by his client, when such were made to the attorney, in his professional character, and the advice of the attorney thereon, and the subject is now governed by the provisions of subsection 4, section 606, Civil Code, which is said to be a declaration of the common law upon that subject. The Code provisions, *supra,* are as follows:

"No attorney shall testify concerning a communication made to him in his professional character, by his client, or his advice thereon, without the client's consent: . . ."

Touching all matters, an attorney is a competent witness and is privileged to testify, either for or against his client, except as to communications made to him, in his professional character, by his client, and as to such, he can not testify, without the consent of the client, although the relationship has ceased between them. As said in Carter v. West, 93 Ky. 211, "the seal of silence is upon it"—such communication—"subject to be broken by the consent of the client only." Hence, the matter for decision, here, is whether the communications, offered to be proven, were made to the attorney in his professional character. It is gathered from the text books and authorities, that there are many communications, which a client may make to an attorney, and touching the matter about which the attorney is employed or consulted, which are not made to him, in his professional character, and often times for the reason, that they are communications, which the attorney can not receive in his professional character, and sometimes, as to whether the communication is privileged, depends upon the parties to the controversy, in which he is called, as a witness, to testify concerning the communications. As an instance, where one has been the legal adviser, at the same time and about the same matter for two persons, the statements made to him by either of them, in the presence of the other, are not privileged communications, in a controversy with each other, though they are privileged, in a contest between them. and other persons. Rice v. Rice, 14 B. M. 135; Smick v. Beswick, 113 Ky. 439. The principle, upon which this rule is based, is that the com-

munications, in such a state of case, are not given nor received in confidence, as to the parties themselves. A communication made by a client to his attorney, for the purpose of having it communicated to another, is not privileged. List, et al. v. List, etc., 26 K. L. R. 691. As an instance of the character of communications which can not be given to nor received by a lawyer, in his professional character, are communications made to a lawyer by persons, who are contemplating the commission of crimes, or the perpetration of frauds, and who seek the advice of the lawyer, as to how the crimes or frauds contemplated, may be committed, and how the consequences of them may be avoided. The reason of the principle, which holds such communications not to be privileged, is that it is not within the professional character of a lawyer to give advice upon such subjects, and that it is no part of the profession of an attorney or counselor, at law, to be advising persons, as to how, they may commit crimes or frauds, or how, they may escape the consequences of contemplated crimes and frauds. If the crime of fraud has already been committed and finished, a client may advise with an attorney in regard to it, and communicate with him freely, and the communications can not be divulged as evidence, without the consent of the client because it is a part of the business and duty of those engaged in the practice of the profession of law, when employed and relied upon for that purpose, to give advice to those, who have made infractions of the laws; and to enable the attorney to properly advise, and to properly represent the client in court, or when prosecutions are threatened, it is conducive to the administration of justice, that the client shall be free to communicate to his attorney all the facts within his knowledge, and that he may be assured, that a communication, made by him, shall not be used to his prejudice. While the general rule, which applies to communications made by a client to his attorney, in his professional capacity, and his advice thereon and to information acquired by an attorney from his client, or touching his client's affairs, concerning matters about which he is employed, in his professional capacity, is, that, he can not, and will not be permitted to give evidence touching such matters without the client's consent, but, the exception, touching communications to an attorney concerning crimes and frauds, which the client

has in contemplation, and in furtherance of which he makes the communications, is as broad as the rule itself. The exception as stated by Thornton on Attorneys, vol. 1, 214, is: "Where an attorney is consulted for the purpose of obtaining advice as to the perpetration of a fraud, or in aid or furtherance thereof, the communications, made to him, by one having such purpose in view, are not privileged."

In Chamberlyn, vol. 5, 5280, it is said: "The protection, which the law affords to communications between attorney and client, has reference to those, which are legitimately and properly within the scope of a lawful employment. It does not recognize those, which may be made in connection with and an aid to the accomplishment of a criminal purpose. It is the duty of an attorney, in the eyes of the law, to act in conformity with the laws in force and in no way endeavor to violate them, or to aid, in their violation."

In 40 Cyc. 2373, the exception is defined, as follows: "The rule does not extend to communications respecting proposed infractions of the law, and so there is no privilege as to communications made in contemplation of the future commission of a crime, or perpetration of a fraud, in which, or in avoiding the consequences of which, the client asks the advice or the assistance of the attorney. But, communications in respect to an alleged crime or fraud made after the act or transaction is finished are privileged."

While the decisions of the courts, in the various jurisdictions, have not been, altogether, harmonious, as to the soundness of the exception above stated, it is sustained by the weight of modern authority, and is consistent with the purposes of the general rule, which is to aid the dispensing and administration of justice, and not the dispensing of injustice. Matthews v. Hoagland, 21 Atl. 1054; Orman v. State, 6 S. W. 544; State v. Faulkner, 175 Mo. 546; Hickman v. Green, 123 Mo. 165; Hyman v. Grant, 102 Tex. 50; Taylor v. Evans, 29 S. W. 172; Collins v. Hoffman, 113 Pac. 625; Dudley v. Beck, 3 Wis. 274; Dunn v. Amos, 14 Wis. 106; Hamil v. England, 50 Mo. App. 338; Stone v. Stinnett, 121 S. W. 187; Supple v. Hall, 96 Am. St. Rep. 188; Rex v. Cox, 142 B. D. 153. In the instant case, the communications avowed to have been made by the appellee to her attorney, tended to prove, that she had procured her house to be burned,

but it was not permissible to prove her communications, over her objections, for that purpose, in this action, but, the fact, of having procured the burning of her house, she was then seeking to defraud the insurance company, by pretending, that the burning was accidental, or done without her participation, and thus to enable her to recover the insurance by fraud, and that she had employed the services of the attorney to assist her in doing so, and the communications were made to him for his advice and in furtherance of her contemplated fraud, renders it permissible to prove the communications made by her in reference to her connection with the burning of the house by the attorney to whom the communications were made. Such communications were not made to the attorney, in his professional capacity, as they were such, as he could not receive in such capacity, and therefore, were not privileged. Hence, the trial court erroneously excluded, from the jury, so much of the testimony of the attorney, as would detail the communications made to him, by appellee, touching the connection which she had with the burning of the house, but, the other statements proposed to be made by the attorney, were properly excluded.

The judgment is therefore reversed, and cause remanded for proceedings not inconsistent with this opinion.