1 So.2d 21

### SAWYER v. STANLEY.

### 7 Div. 623.

Supreme Court of Alabama.

Feb. 13, 1941.

Rehearing Granted March 6, 1941.

Further Rehearing Denied March 27, 1941.

Goodhue & Lusk, of Gadsden, L. L.
Crawford, of Fort Payne, and Erle Pettus,
of Birmingham, for appellant.

Isbell & Beck and Scott & Dawson, all of Fort Payne, and Rains & Rains, of Gadsden, for appellee.

THOMAS, Justice:

This is the second appeal. Stanley v. Sawyer, 237 Ala. 515, 187 So. 425.

The record has been carefully examined and it is thought unnecessary that the main facts be now discussed. They were substantially indicated in the former opinion. The additional evidence induces us to hold that a jury question was presented. The fact that the two handwriting experts by a different course of reasoning arrived at the like result of a forgery does not change the preponderance of the evidence in favor of the result declared in the verdict of the jury and the judgment thereon.

On the former appeal, rules of privileged communications between an attorney and his client or prospective client were applied to the questions set out in the opinion, and they were held to be without the general rule of a privileged communication and that the questions and answers sought to be placed in evidence were permissible. The questions were within the exception to the rule and presented the testimony of an attorney as to his statements and necessary actions for his client with certain persons as to and in the matter of his employment. Stanley v. Sawyer, supra. In that opinion no mention was made of the statute (Code, §§ 7658 and 7726) touching an

attorney's inability to testify as to any matter or thing, knowledge of which he acquired from his client by virtue of the relationship of attorney or by reason of his anticipated employment as attorney. This was the subject of consideration in Guiterman, Rosenfield & Co. v. Culbreth et al., 219 Ala. 382, 122 So. 619, where Mr. Justice Sayre observed that this section (Code, § 7726) "like a number of others which have found place in the Codes of recent years, is but a declaration of the law previously administered by the courts, to which it contributes nothing. 5 Wigmore, Ev., 2d Ed., § 2292." See also Vacalis v. State, 204 Ala. 345, 86 So. 92 and Code of 1923, §§ 7658 and 7726.

May we look to the general authorities on the subject of privileged communications between attorneys and clients? The subject is given exhaustive treatment in 28 R.C.L. p. 548, § 138 et seq., and the general observation is made, on abundant authority, that:

"It is difficult to frame a general statement, that is at the same time specific and accurate enough to be useful, of the extent to which communications between attorney and client are privileged from compulsory disclosure in courts of law, since this must often necessarily depend not only on the matter of the communication itself, but on the circumstances of the particular case. Generally speaking, however, it may be said that the privilege extends to all communications made to a legal adviser duly qualified as such, and employed and acting in that capacity, where the object of the party is to obtain a more exact and complete knowledge of the law affecting his rights, obligations or duties relative to the subject matter to which such communications relate. * * * p. 558, § 147.

"* * * it would now seem to be well settled that the privilege between attorney and client is not limited to cases wherein advice is sought regarding litigation either pending or impending, but exists in any case wherein the professional advice or assistance of an attorney is solicited. * * * p. 559 § 148

"The law does not regard it as necessary for the protection of the client that his communications should be made to his attorney under injunctions of secrecy. * * * p. 561, § 150 .

"In order that the rule as to privileged communications between an attorney and his client or its reason shall apply, it is inherently necessary that the communication made by the client to the attorney or to his clerk *should be confidential.* * * * * * *." p. 561, § 151 [Italics supplied.]

In this jurisdiction the rules of privileged communications between attorneys and clients, under our statute and decisions, are in accord with the general authorities. Sovereign Camp, W. O. W. v. Pritchett, 203 Ala. 33, 81 So. 823; Sovereign Camp, W. O. W. v. Ward, 196 Ala. 327, 71 So. 404; Ganus & Co. v. Tew, 163 Ala. 358, 50 So. 1000.

As was noted on the first appeal, recognized *exceptions* to the general rule exist, and one of the exceptions is well stated in 70 Corpus Juris, p. 426, § 569 (17) as follows: "There is no privilege as to statements by a client to his attorney for communication to a third person, or which are intended to be made public, or matters which the attorney, in the discharge of his duty to his client, is necessarily obliged to make public. Nor does the privilege extend to communications made by an attorney to his client at the instance and request of the opposing solicitor or adverse party. So an affidavit prepared by the attorney for his client is not privileged."

Section 570, (18) is as follows: "An attorney cannot disclose the advice which he gave to his client about matters concerning which he was consulted professionally, nor can the client be required to divulge the advice which his attorney gave him. * *."

It will be noted that the matters sought to be inquired about and considered on the first appeal were held to be communications within the exception that touch third persons, and to be disclosed in the discharge of the attorney's duty to his client by inquiry from third parties or an independent source. Hence the ruling on the former appeal, that the attorney could be required to answer the specific questions propounded to him by contestants. Stanley v. Sawyer, supra.

It should be said that during the examinations of Mr. and Mrs. LeFurgey, the witnesses to the will in question, reference was made to their visits to Fort Payne and their conversations while there with Mr. Wolfes, Dr. Wright, Mr. Sawyer and Mr. Beck by way of inquiry as to whether or not Mr. Stanley left a last will with them. This was before their assertion of the existence of the will produced by them

and purporting to have been witnessed by them in 1933 in the presence of the testator, and of which they had had made some years previously a photostatic copy. Hence the inquiry in question to these witnesses and parties was properly admitted in evidence as material to the issue of forgery vel non.

It may be said that the witnesses to the alleged will, one a beneficiary thereunder (and their child a named beneficiary in large sums), were examined upon the fact of their inquiries of Messrs. Beck, Wolfes, the attending physician and the nurse of Mr. Stanley during his last illness, as to whether or not he left a last will. Suffice it to say that both proponents and contestants adverted to the fact of the inquiries of the LeFurgey family in their examinations of witnesses. It was sought to be shown by the testimony of Messrs. Beck, Wolfes and Dr. Wright that Mr. and Mrs. LeFurgey had made such inquiries, without disclosing the fact that they themselves were in possession of an alleged will of date of October, 1933, and/or a photostatic copy thereof.

Under the pleading proponent had the right to object in the first instance to such line of testimony and if this right was waived by inviting the cross examination of LeFurgey, such action still was not a waiver of the privileged communication rule as affecting the right to introduce Wolfes, their attorney, against and over proponent's objection. The extent of a waiver is indicated in Louisville & Nashville R. R. Co. v. Hill et al., 115 Ala. 334, 335, 349, 22 So. 163; 70 Corpus Juris 376, et seq.

It is apparent that the statements of Mr. Beck as to the matter inquired about on the part of the LeFurgeys was material evidence of the fact to be considered by the jury as to whether or not Mr. Stanley had left the last will and testament sought to be probated and whether the witnesses to the will knew such fact at the time of their inquiries. As to proving this fact by Wolfes, the pertinent observations that follow were made in Hawes v. State, 88 Ala. 37, 68, 7 So. 302, 313: "It is a thoroughly well-settled and familiar principle that communications between client and attorney, or from any person to an attorney, with a view to establishing the relation of client and attorney as to a particular matter, and securing professional advice or other aid in respect thereto, are privileged,

and cannot be put in evidence, unless the privilege be waived by the client. * * * But the rule extends no further than this. The reasons upon which it rests, the salutary objects, sought to be attained by its observance, do not require that it should embrace communications made to an attorney otherwise than in securing or directing his professional services, or communications made to the agent or clerk of an attorney otherwise than for transmission to the attorney, or, at least, in and about and in furtherance of the discharge of the duties incident to the confidential relation. The privilege, in other words, is confined to communications between the attorney and his client; and extends to the necessary organs by which such communications are made, but no further. Tayl. Ev. pp. 791, 792; 1 Greenl. Ev. §§ 239, 240; Whart. Law of Ev. §§ 581, 582; Taylor v. Forster, 2 Car. & P. 195; Moss v. Brander, 1 Phillim. Ecc. 254; Studdy v. Sanders, 2 Dowl. & R. 347; Cotton v. State, 87 Ala. 75, 6 So. 396."

Was the evidence of Mr. Wolfes within the rule and as introduced in the trial by proponent, if within the rule, a waiver thereof. In the examination of Mr. Wolfes, the bill of exceptions shows the following occurred:

"I am an attorney at Fort Payne. Have been practicing here for 27 years, knew J. P. Stanley in his lifetime. Knew Mr. Will LeFurgey, knew his wife, Mrs. Viola LeFurgey. Shortly after the death of Mr. Stanley they visited my office.

"There upon the witness was asked the following question by Mr. Scott for the contestant: 'I will ask you to give as near as you can the conversation they had with you at that time.' The proponent objected to the question because it called for a confidential communication between client and attorney. The court overruled the objection and proponent excepted.

"Mr. Wolfes, the witness, stated: Of course, I don't want to disclose anything said to me as an attorney unless by order of the Court.

"By the Court: The court overruled the objection. By Mr. Pettus for the Proponent: We understand the witness claims the privilege of not being required to testify, and the court requires him to testify.

"Thereupon the court overruled the objection to the question and overruled the claim or privilege by the attorney. The

proponent excepted as to each ruling and action of the court separately and severally.

"Thereupon the witness, Mr. Wolfes, testified as follows:

"Mr. and Mrs. LeFurgey came to my office, I don't know whether Mr. LeFurgey or both of them talked to me and they stayed there I imagine.

\* \* \*

"By The Court: All right.

"Q. And Mr. LeFurgey in the presence of Mrs. LeFurgey. Witness then testified as follows: And Mr. LeFurgey in the presence of Mrs. LeFurgey, requested me to examine the records in the office of the probate judge to see whether or not Mrs. LeFurgey had ever been adopted by Mr. Stanley. He asked me if I had heard of any will that had been made by Mr. Stanley and I interrogated him about the matter and asked him whether he knew of any will and he said that the only will he knew of was the one Mr. Stanley had made prior to Mrs. Stanley's death, and I asked him whether or not he thought Mrs. LeFurgey was adopted and he seemed to think that she was. The question then came up as to whether or not she was not adopted whether or not Mrs. LeFurgey could file a claim for work or services rendered Mr. Stanley in his lifetime and they told me about the date when it was and I advised them that it occurred to me that a claim made might be barred since they lived away from her such a long time. I agreed to examine the docket and records of the county and write them. That is about all I recall.

"Thereupon the proponent moved to exclude the witness' testimony on the grounds that it was confidential communication between attorney and client; that it was incompetent, irrelevant, and immaterial. Thereupon question was asked the witness: By the contestant: I will ask you Mr. Wolfes, whether or not you asked them specifically whether they knew of any will that Mr. Stanley had made.

"Thereupon this question was asked the witness by the contestant: I will ask you whether or not you asked him whether or not he knew of any one who had witnessed a will? The proponent objected on the same grounds, the court overruled the objection, proponent excepted and witness answered: Yes, I did. Thereupon the proponent moved to exclude the an-

swer and the court overruled the motion, and proponent excepted.

"Thereupon witness was asked the question: What did he say? Proponent objected on same grounds, the objection overruled and proponent excepted. The witness answered: He said he didn't know of any will. Proponent moved to exclude the answer and the court overruled the motion and proponent excepted.

"Thereupon the witness was asked the following question: Did you have another conversation later than that? Witness testified, I had several. Proponent moved to exclude the said answer of this witness on the same ground, the court overruled the motion, and proponent excepted.

"Thereupon the witness testified I had 7 or 8 conversations with them, he did not during any of the conversations say anything about knowing of Brother Stanley making a will until he brought the photostatic copy. This was about the middle of January 1938."

It is apparent that this material testimony was offered over the objections of proponent and is indicated by the excerpt from the record above set out.

We are of opinion that the questions to and answers by Mr. Wolfes, and the one "If you asked them specifically whether they knew of any will that Mr. Stanley had made", and the question and answer that Mr. LeFurgey "did not during any of the conversations say anything about knowing of Brother Stanley's making a will until he brought the photostatic copy to witness about the middle of January, 1938," were contrary to the rule of privilege communications within Sections 7726 and 7658 of the Code of Alabama of 1923.

Considering from every angle certain charges that were given at the request of the contestant, which we designate as "A", "B" and "D", it appears that "A" and "B" were argumentative and confusing, and that charge "D" was argumentative and invades the province of the jury.

We find no reversible error in the refusal of proponent's charge which we designate as "C", as such charge was confusing and misleading as to the two classes of evidence—positive and circumstantial.

The foregoing are illustrations of other charges which need not be considered in detail here.

It follows from the foregoing that the case should be retried in accordance with this and the ruling on first appeal.

Reversed and remanded.

GARDNER, C. J., and BROWN and KNIGHT, JJ., concur.

## On Rehearing.

THOMAS, Justice.

We indicated in the original opinion that a privileged communication between principal and agent may be waived, Louisville & Nashville R. R. Co. v. Hill et al., 115 Ala. 334, 22 So. 163; and between an attorney and client, Hawes v. State, 88 Ala. 37, 7 So. 302; Cotton v. State, 87 Ala. 75, 6 So. 396.

■ As between the client and attorney the privilege is for the benefit of the client and may be waived. Code of 1923, § 7658. The privilege is for the benefit of the attorney of the client as to any matter or thing knowledge of which he may have acquired from his client by virtue of his relation as attorney or by reason of his anticipated employment as attorney. Code, § 7726. Said statute further provides that an attorney "shall be both competent and compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner." These statutes were enacted to protect *lawful transactions* between an attorney and a client and *not to effectuate or facilitate the commission of crime*.

■ In the case at bar the proponent is Mr. Sawyer, who was named in the alleged will as executor. The record shows that the LeFurgeys were interrogated by the proponent on direct examination, concerning the matter about which Mr. Wolfes was interrogated by contestants. The inquiries made by Mr. LeFurgey, who was not a beneficiary under the will, were material to the success of the allegation as to forgery of the will and as to whether a will had been made by the testator.

■ The right of waiver of the privilege by a party to a litigation is well established by the decisions in other jurisdictions. As we understand the general authorities, the question of a waiver is not presented, but that of an exception to the general rule of "privileged communications."

Privileged communications to an attorney by a client in an attempt to establish a false claim was the subject of consideration and exhaustive annotations in 5 A.L.R. 977, to the effect that "since the perpetration of a fraud is outside the scope of the professional duty of an attorney, no privilege attaches to a communication between attorney and client with respect to the establishment of a false claim." Such was the effect of the holding in Standard Fire Ins. Co. v. Smithhart, 183 Ky. 679, 211 S.W. 441, 5 A.L.R. 972.

In 125 A.L.R. 512 et seq., state and federal authorities, as well as those from England, Ireland and Canada are collected to the effect that the great majority of the cases hold that the *privilege* "protecting communications between attorney and client *is lost if the relation is abused, as where the client seeks advice that will serve him in the commission of a fraud.*" Such is the rule that obtains in the instant case. [Italics supplied in quotation.]

It may be said further that the reason most frequently advanced for this exception to the rule of privileged communications is that there is *no professional employment, properly speaking,* in such cases. Standard F. Ins. Co. v. Smithhart, 1919, 183 Ky. 679, 211 S.W. 441, 5 A.L.R. 972; Cummings v. Com., 1927, 221 Ky. 301, 298 S.W. 943; Strong v. Abner, 1937, 268 Ky. 502, 105 S.W.2d 599; People v. Van Alstine, 1885, 57 Mich. 69, 23 N.W. 594; Hamil & Co. v. England, 1892, 50 Mo.App. 338; Carney v. United R. Co., 1920, 205 Mo.App. 495, 226 S.W. 308; Matthews v. Hoagland, 1891, 48 N.J.Eq. 455, 21 A. 1054; Coveney v. Tannahill, 1841, 1 Hill, N.Y., 33, 37 Am.Dec. 287; People v. Warden, 1934, 150 Misc. 714, 270 N.Y.S. 362; Id., 242 App.Div. 611, 271 N.Y.S. 1059; Russell v. Jackson, (1851) 9 Hare 387, 68 Eng.Reprint 558; Charleston v. Coombes (1863) 4 Giff. 372, 66 Eng. Reprint 751; Reg v. Cox [1884] LR. 14 QB. Div. (Eng.) 153—CCR; Re. Postlethwaite [1887] LR. 35 Ch.Div. (Eng.) 722.

In Reg. v. Cox, supra, the court said. "In order that the rule may apply, there must be both professional confidence and professional employment, but if the client has a criminal object in view in his communications with his solicitor one of these elements must necessarily be absent. The client must either conspire with his solicitor or deceive him. If his criminal

object is avowed, the client does not consult his adviser professionally, because it cannot be the solicitor's business to further any criminal object. If the client does not avow his object, he reposes no confidence, for the state of facts which is the foundation of the supposed confidence does not exist. The solicitor's advice is obtained by a fraud."

So, in Strong v. Abner, 268 Ky. 502, 105 S.W.2d 599, 602, the court said: " * * * The protection which the law affords to communications between attorney and client, has reference to those which are legitimately and properly within the scope of a lawful employment. It does not extend to communications made in contemplation of * * * a crime, or perpetration of a fraud." See also Standard F. Ins. Co. v. Smithhart, 183 Ky. 679, 211 S.W. 441, 5 A.L.R. 972.

The Michigan court in People v. Van Alstine, 57 Mich. 69, 23 N.W. 594, 598, in holding not privileged communications to an attorney having for their object the commission of a crime, said: "They then partake of the nature of a conspiracy, or attempted conspiracy, and it is not only lawful to divulge such communications, but under certain circumstances it might become the duty of the attorney to do so. The interests of public justice require that no such shield from merited exposure shall be interposed to protect a person who takes counsel how he can safely commit a crime. The *relation of attorney and client cannot exist for the purpose of counsel in concocting crimes."*

In Charlton v. Coombes (1863) 4 Giff. 372, 66 Eng.Reprint 751, the English court said: "The court cannot permit it to be said that the contriving a fraud forms part of the professional business of an attorney or solicitor."

To the same effect is Garside v. Outram (1856) 3 Jur.NS. (Eng.) 39, and Annesley v. Anglesea (1743) 17 How.St. Tr. (Eng.) 1229.

The authorities are ample to the effect that an *intended* crime or fraud on the part of a client will not destroy the privilege ordinarily accorded communications between attorney and client, there *must be prima facie evidence that it has some foundation in fact.* Such are the holdings in Clark v. United States, 1933, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993, and well considered opinions from Georgia, Massa-

chusetts, Missouri, New York, Pennsylvania, as well as from England.

 The communications in question were subsequent to the date of the will and no doubt these inquiries were made to aid in the production and probate of the alleged will. The record has been carefully examined again, in the light of the many authorities set out above, and we are now of the opinion and hold that the *matter stated by Mr. Wolfes, an attorney,* over the objection of Mr. Sawyer, the proponent of the will, *fell within the exception to the general rule of privileged communications,* and no error was committed by the trial court in admitting the testimony of such witness.

A further examination of the record and charges and rulings on charges presented for review are found not to warrant a reversal of this cause. True we have said the charges "A", "B" and "D" were argumentative and could well have been refused, but we do not find anything to cause a reversal. It follows from the above that the former judgment of reversal is set aside and one here rendered granting the application for rehearing and affirming the judgment of the trial court.

Application for rehearing granted. Former judgment set aside and case affirmed.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.

KNIGHT, J., not sitting.