## Cluck v. Jesus Is Lord Ministries International Inc.

*Harold A. Eastman,* for plaintiffs.
*Rosemary A. McDermott,* for defendant.

SPICER, *J.,* July 16, 1992—

## OPINION ON MOTION TO DISQUALIFY COUNSEL

This case involves a mortgage foreclosure which has been complicated by mortgagor's attack on the conveyance of lands subject to the mortgage. It contends that mortgagee either concealed the nature of the property as wetlands, or failed to disclose the condition. We are not asked presently, to unravel that particular controversy. It is important only as it relates to mortgagor's attempts to disqualify the mortgagee's attorney from participation in the case. Therefore, we view the case from that perspective.

### CAST OF CHARACTERS

Plaintiffs are individuals and husband and wife. Little is said about Mrs. Cluck. Mr. Cluck is, among other things, a Cumberland Township supervisor. Our references to plaintiffs' side will generally involve only Mr. Cluck.

Defendant is a corporation which has primarily acted through its minister and president, Reverend Michael H. Yeager.

The targeted attorney is Henry O. Heiser III, who was, at all relevant times, both Mr. Cluck's private counsel and solicitor for Cumberland Township.

## THE TRANSACTION

Prior to September 25, 1989, plaintiffs owned a 20.438 acre tract in Franklin Township, Adams County. Negotiations began for the purchase of that land by defendant. Reverend Yeager said Mr. Cluck told him: (a) others were interested in buying; (b) the land was very valuable and that acreage could be sold off to pay for the entire purchase price and; (c) title was good.

While most of this is disputed, it seems clear that nothing was said about all or part to the acreage being considered wetlands.

Mr. Cluck procured the drafting of an agreement of sale by Mr. Heiser. Part of the terms included: (a) a purchase money mortgage, on which the foreclosure was instituted; (b) a statement that time was of the essence; (c) a statement that the premises were being sold "as is," and; (d) a provision that portions of the land could be released from the purchase money mortgage as those parcels were independently sold by defendant.

Reverend Yeager signed the agreement without consulting with an attorney. In depositions, he expressed the philosophy that he trusted people and sometimes it worked and sometimes it didn't.

The parties proceeded to settlement. There, Reverend Yeager met and spoke to Mr. Heiser for the first time. Mr. Heiser conducted the settlement and charged plaintiffs for a number of things and also charged defendant for preparing the mortgage and bond.

No discussion occurred at settlement about wetlands.

Some time later, a member of the U.S. Army, Corps of Engineers, saw work in progress on the land in question,

and told defendant to cease and desist because wetlands were involved. We do not know how much of the land falls into this category.

Although the land was approved for subdivision by Franklin Township, no mention was made of wetlands. At present, the sole proof that part of the acreage may be subject to government wetlands restrictions are letters from the Corps of Engineers.

## THE CONTENTIONS

Defendant claims Mr. Cluck committed active fraud by lying about value of and interest in the property. It also claims fraudulent concealment of wetlands status.

Mr. Cluck denies being aware of wetlands and denies lying about anything.

Originally, defendant seemed to contend that Mr. Heiser aided Mr. Cluck's fraud by including "as is" and "time is of the essence" in the contract. Focus may have since shifted to a contention that Mr. Heiser was/is aware of Mr. Cluck's familiarity with wetlands and could so testify. This position is not based upon anything that anyone has said. Rather, it is grounded on what has not been said.

Mr. Cluck, for example, testified that he had no discussions with Reverend Yeager about the latter's plans for the tract. Defendant argues that this cannot be true, otherwise there would have been no need for the provision of lien releases in the agreement.

Reverend Yeager's deposition is interesting as it concerns defendant's understanding of Mr. Heiser's role at settlement. After several objections were made about the way questions were phrased Reverend Yeager said

Mr. Heiser eagerly accepted his money, leading him to assume Mr. Heiser would protect defendant's interest.[1] Mr. Cluck, at least twice during his depositions, flatly said that Mr. Heiser asked Reverend Yeager whether he wanted a lawyer and was answered with a "no."

Reverend Yeager neither sought nor received advice from Mr. Heiser.

In his depositions, Mr. Cluck has professed ignorance about wetlands in general and the specific status of the property conveyed. Defendant argues that Mr. Cluck, as a township supervisor, deals with these types of land use issues all the time. Therefore, defendant seeks to use Mr. Heiser's testimony to prove Mr. Cluck's familiarity, if not expertise.

In summary, the following emerge as issues:

(1) Is defendant entitled to call Mr. Heiser to testify:

(a) to matters about which others are familiar, that is, what occurred in Cumberland Township proceedings, one of which was a public meeting?

(b) to specific discussions between Mr. Heiser and Mrs. Cluck about wetlands?

A central concern is the attorney/client privilege.

(2) Regardless of Mr. Heiser's status as a potential witness, should he be removed from the case because of prior representation of defendant?

## DISCUSSION

Any case involving disentitlement to services of a particular lawyer involves sensitive, important and complex

---

1. This is reminiscent of the medieval notion that if you accepted the king's coin you were the king's man.

policy considerations. No person should be lightly deprived of the right to be represented by counsel of choice. Lawyers should be free to pursue their profession.

The *Code of Professional Ethics* is helpful, but not necessarily authoritative. *Maritrans v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992). Nonetheless, it is with the Code that we begin our analysis.

Rule 3.7 states:

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) the testimony relates to an uncontested issue;

"(2) the testimony relates to the nature and value of legal services rendered in the case; or

"(3) disqualifications of the lawyer would work substantial hardship on the client.

"(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."

Mr. Heiser argues that when testimony is available from other sources, he cannot be considered a necessary witness. We agree. To rule otherwise would be to ignore the obvious meaning of "necessary." It would also invite abuse in an area where broad exceptions can wreak havoc with fundamental rights. No client would want to appear in a public proceeding with counsel, if she or he knew that, out of numerous witnesses, an adversary could call that lawyer to describe what occurred. These concerns are not merely academic. We have expressed concern in previous disqualification matters, unrelated to this case, about tactical use of disqualification requests. One duty

we frequently hear described by counsel is the one of diligent representation. "I owe it to my client to do everything I can" is an often repeated statement. It is sometimes carried to extreme, as the case sub judice could easily illustrate.

Another rule should be partially quoted with respect to specific discussions between Mr. Heiser and Mr. Cluck. In this respect, we see little difference between advice given to township supervisors and Mr. Cluck individually.

"Rule 1.6. *Confidentiality of Information—*

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c)....

[(b) refers to duty of candor toward the tribunal.]

"(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:

"(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm or substantial injury to the financial interests or property of another;

"(2) to prevent or to rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used...." See also 42 Pa.C.S. §5938.

This rule is reflected in case law. If an attorney's advice or services are used to promote an intended, continuing criminal or fraudulent activity, communications are not privileged. *Nadler v. Warner Co.,* 321 Pa. 139, 184 A.2d 3 (1936); see also *In re Investigating Grand Jury,* 527 Pa. 432, 593 A.2d 402 (1991); *Brennan v.*

*Brennan,* 281 Pa. Super. 362, 422 A.2d 510 (1980); *In re Westinghouse Electric Corp.,* 76 F.R.D. 47 (1977).

The Supreme Court described the exception in the grand jury case, *supra,* as follows:

"[T]his court's decision in *Nadler v. Warner Co.,* 321 Pa. 139, 143-144, 184 A. 3, 5 (1936), wherein we stated:

"The reason for the non-application of the rule has been variously stated:

"'[N]o court can permit it to be said that the contriving of a fraud can form part of the professional occupation of an attorney or solicitor.' *Follet v. Jefferyes,* 1 Sim. (n.s.) 1, 61 Eng. Rep. 1. 'In order that the rule may apply there must be both professional confidence and professional employment, but if the client has a criminal object in view in his communication with his solicitor one of these elements must necessarily be absent. The client must either conspire with his solicitor or deceive him. If his criminal object is avowed, the client does not consult his adviser professionally, because it cannot be the solicitor's business to further any criminal object. If the client does not avow his object he reposes no confidence, for the state of facts, which is the foundation of the supposed confidence, does not exist. The solicitor's advice is obtained by a fraud.' *Queen v. Cox,* 14 Q.B.D. 153, 168. 'Such communications were not made to the attorney, in his professional capacity, as they were such, as he could not receive in such capacity, and therefore, were not privileged.' *Standard Fire Insurance Co. v. Smithhart,* 183 Ky. 679, 685; 211 S.W. 441. See, too, *Matthews v. Hoagland,* 48 N.J.Eq. 455, 469, 21 A. 1054. When the advice of counsel is sought in aid of the commission of crime or fraud, the communications are not

'confidential' within the meaning of the statute and may be elicited from the client or the attorney on the witness stand. 'There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.' *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993. See also, Wigmore, *Evidence,* vol. 4, §2298.

"The crime-fraud exception is applicable even when the client alone is guilty. The Commonwealth argues that an abuse of the attorney-client privilege has been demonstrated in this case based upon the grand jury testimony and documentary evidence. We are not persuaded, however." *In re Investigating Grand Jury, supra* at 441, 593 A.2d at 407.

Allegations of fraud are easily made. If all someone had to do to seriously inconvenience an opposing party[2] was to make such an allegation, many could be the cases of disqualification. Counsel should not be disqualified for speculative reasons. *Commonwealth v. Cassidy,* 390 Pa. Super. 359, 568 A.2d 693 (1989).

Defendant's two assertions must be separately considered. The first is that Mr. Cluck lied about value and interests of other buyers. These hardly involve Mr. Heiser. Even if they did, they can be described no harsher than puffing or boasting. If such statements were grounds to vitiate transactions, few conveyances would be risk free. See *Berkebile v. Brantly Helicopter Corp.,* 462

---

2. We think removal of a person's counsel of choice is always a serious matter.

Pa. 83, 337 A.2d 893 (1975), and *Snyder v. Greenawalt*, 4 Adams L.J. 177 (1963).

The second involves the land's suitability for future development. Contracts can be voided and damages awarded when a duty to speak exists and critical information is not revealed. Most authority in this area involves conditions of real estate, such as termite damage or clogged sewers, which are not revealed. See, e.g. *Shane v. Hoffman*, 227 Pa. Super. 76, 324 A.2d 532 (1974).

Defendant claims that Mr. Cluck was fully aware of defendant's plans to sell off portions of the tract and, in fact, represented that it could easily be done. Mr. Cluck, as previously noted, denies such discussions.

As we understand defendant's theory:

(1) Mr. Cluck knew, or had reason to know, the tract was classified as wetlands;

(2) Mr. Cluck had Mr. Heiser prepare an agreement stating that the premises were sold "as is" and that portions could be released from the mortgage as they were sold;

(3) Neither Mr. Heiser nor Mr. Cluck revealed the status of the lands to defendant.

Mr. Heiser suggests that the parol evidence rule may preclude these discussions. We see little point in inquiring into the admissibility of oral statements prior to the execution of the agreement, but observe the agreement has no integration clause. Be that as it may, we need to focus on whether the record indicates, sufficiently, that Mr. Cluck conferred with Mr. Heiser with the purpose of promoting an intended fraud.

In this day of extensive government regulation, "as is" clauses are increasingly more common. One cannot

draw the inference that nefarious plots are afoot simply because a lawyer drafts an agreement including the phrase. We have read the agreement. It contains nothing more than any careful attorney would have prepared.

Viewing the record, we have: (1) Mr. Cluck's disavowal of either knowledge of wetlands or concealment; (2) Mr. Heiser's necessarily limited statements which, because of his assertions of the attorney/client privilege, neither definitely address or answer the question; (3) testimony by Reverend Yeager, somewhat contrary to Mr. Cluck, as to the latter's characterizations of the land; (4) Mr. Cluck's testimony that he did not request specific provisions in the agreement of sale; and (5) suspicion defendant argues is sufficient to crack the can of confidentiality.

We would certainly not preclude defendant from pursuing a theory of fraud, based on this record. That is quite a different matter than ordering Mr. Heiser out of the case.

We find defendant's assertions too speculative to justify the drastic remedy it seeks.

Actually, our review of the records uncovered only minimal concern about the land on the part of either Mr. Cluck or Reverend Yeager.

As the *Maritrans* case, *supra*, makes amply clear, attorneys can be disqualified by reason of prior employment.

The record is fairly clear that Reverend Yeager received no advice from Mr. Heiser at any time. He made no inquiries and engaged in no discussions which could be classified as bearing on an attorney/client relationship. By the time he actually met Mr. Heiser, he had executed the agreement of sale on behalf of defendant.

Reverend Yeager may have harbored expectations that Mr. Heiser would look after his interests. However, he did not pay for this type of service. The situation is one where people are accustomed to comment "I don't really need a lawyer." No policy reason exists which would make Mr. Heiser's representation of plaintiffs inappropriate.

The attached order is entered.

## ORDER OF COURT

And now, July 16, 1992, the motion to disqualify counsel is denied.